COUNTY OF OBION *v.* MARGARET EDWARDS, *et al.*

*(Nashville.* December Term, 1928.)

Opinion filed July 20, 1929.

PIERCE & FRY, for plaintiffs in ·error.

E. H. LANNOM and W. S. DRAPER, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is a contest between Mrs. Edwards and the Housers with respect to a fund of $751.54 awarded against the County of Obion in a condemnation proceeding by which it acquired 7.27 acres of land in said County for road purposes.

In 1919, Mrs. Edwards conveyed a tract of land, containing 104 acres, in trust to secure a loan of $6,000 from the Federal Land Bank. Default having been made in the payment of said indebtedness, the trustee advertised the land for sale on November 1, 1927, and sold

same on December 10, 1927, to A. C. and W. A. Houser for $8,700.

On November 15, 1927, the County of Obion, for the use of the State, instituted condemnation proceedings in the circuit court by which it sought to acquire 7.27 acres of said 104. acre tract for road purposes. The Land Bank was made a party to said suit. The right of the County to take was conceded. The controversy was limited to the amount of damages recoverable.

The State took actual possession of the 7.27 acres on November 3, 1927, and began the construction of a road thereon, and continued in possession until the road was completed.

In January, 1928, the two Housers were made parties, and a formal order was entered divesting title out of them and Mrs. Edwards, and vesting same in the County for highway purposes.

Subsequently, the value of the 7.27 acres was fixed at $727, to which interest from the date of the taking, November 3, 1927, was added in the sum of $24.54, making the total damages awarded $751.54.

The question for decision is whether Mrs. Edwards or the Housers are entitled to said damages, and that, in turn, depends upon the date of the taking, as that term is understood in law. If the taking was prior to December 10, 1927, then Mrs. Edwards is entitled to the fund. If subsequent to that date, then it belongs to the Housers.

In 10 R. C. L., 66, it is said:

"Taking under the power of eminent domain may be defined as entering upon private property for more than a momentary period and, under the warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting

494

it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof.''

 Under section 9 of chapter 149 of the Acts of 1919, the State is authorized to take possession of the right of way upon the filing of the petition for condemnation.

By section 5 of chapter 74 of the Acts of 1917, the State is expressly excused from executing the usual cash bond, and is authorized to take possession of the right of way, and, if necessary, protect same by injunction pending the adjudication as to the amount of compensation to be paid. These acts make adequate provision for the payment of such damages as may be assessed.

 After November 15, 1927, the possession of the State was a lawful one. The owner, Mrs. Edwards, could maintain neither an action in ejectment nor in trespass, but her claim became a personal one for damages which would not pass to a subsequent vendee unless it was especially assigned to him.

In *Smith* v. *Railway Company,* 88 Tenn., 612, the Railway Company, having acquired a right of way by grant from one who was without title, went into possession of the land and began the construction of a railway, when the complainant, who had subsequently acquired the true title, filed his bill to remove the conveyance to the Railway Company as a cloud upon his title and to recover damages for the right of way taken by the Railway Company. Upon the question of recovering damages this court said:

''All other questions out of the way, this suit cannot be maintained as a suit to recover damages for the taking of this right of way through the interest now owned by complainant. He was not the owner of this land and

every interest therein at the time the railway company entered upon and begun the construction of their roadway. The company had, in the exercise of the power conferred by statute, entered upon and appropriated this easement before complainant acquired the land or any interest whatever.

"Damages for taking the land under right of eminent domain belong to the owner at the time of the taking, and such claim for damages does not pass to a grantee of the lands over which a right of way has been taken, unless expressly conveyed. *Railroad* v. *Stovall,* 12 Heisk., 1; Wood's Railway Law, 864.

"The deed to complainant is a mere quitclaim, and the damages due to his grantor did not pass to him."

In *Alloway* v. *Nashville,* 88 Tenn., 510, the city filed a petition to condemn certain property for a reservoir site and entered into possession thereof and began the construction of the plant. The court, in holding that the landowner was entitled to interest on the recovery from the date that the city took possession, said:

"Nevertheless, we have no hesitation in holding, upon general principles, that interest should have been allowed from the time of the appropriation of the property. From that time the original owner was deprived of the use and possession of the land taken. The liability of the city accrued at that date, though the amount thereof is not determined finally until long thereafter. Damages are properly assessed with reference to the value of the land taken and the depreciation of the residue at the time of condemnation. The legal rights of both parties, so far as the damages are concerned, are fixed at that time; subsequent enhancement or diminution of the value, though ever so great, cannot be considered

by the jury in estimating damages. Witnesses are examined as to the amount of damages at the time of appropriation, and not at the time of the trial. That method was properly adopted in this case.''

In *Roberts* v. *Northern Pacific Railroad Co.,* 158 U. S., 10, 39 L. Ed., 876, the court said:

''It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad, and the right to payment from the railroad company, if it entered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad company took possession.''

Sutherland on Damages, vol. 4, sec. 1082, p. 4095, says:

''Where a claim has accrued for damages to an entire tract of land by reason of the actual construction of a railroad over a part of it or the proceedings taken have vested title in the condemnor and before the damages have been assessed or paid the land is sold without any provision in respect to them, the right to such damages remains in the vendor. They belong to the owner at the time of the injury, and do not pass to a subsequent vendee or lessee unless they are specially assigned to him, or to such owner's heirs.''

We find no authorities to the contrary.

The rule thus formulated under the Eminent Domain Statutes is that when the condemnor, with power of eminent domain, enters into actual possession of land necessary for its corporate purposes, it cannot be ousted, but the owner's only remedy is a personal one for dam-

ages, which accrues at the time of the taking, and does not pass to a subsequent vendee unless especially assigned to him.

This court, in construing our Eminent Domain Statutes in *Railroad Company* v. *Moggridge,* 116· Tenn., 447, says: "the theory of the law is that the title to the property passes only when possession is taken under the condemnation proceedings."

In this case the State was authorized by statute to take possession upon the filing of the petition. Whether technically the title passed at that time we find it unnecessary to decide as that question is not involved. The determinative question is that under our statutes, in the circumstances of this case, when the property was actually taken the owner was deprived of all claim to or interest therein except the right to prosecute her claim for damages, and such claim was a personal one that was not acquired by the subsequent purchasers of the land.

The cases cited and relied upon by counsel representing the Housers are not in point but deal with different questions.

The Chancellor held that Mrs. Edwards was entitled to the fund involved, and his decree will be affirmed.