JACK C. STROUD AND WIFE, HAZEL O. STROUD, v. STATE OF TENNESSEE AND TENNESSEE DEPARTMENT OF HIGHWAYS AND PUBLIC WORKS on relation of Roy H. Beeler, Attorney General, and Sevier County.—279 S. W. (2d) 82.

Eastern Section. January 7, 1955.

Petition for Certiorari denied by Supreme Court, May 6, 1955.

Key & Lee, of Knoxville, and Ogle & Ogle, of Sevierville, for plaintiffs in error.

Townsend & Hailey and David M. Pack, all of Sevierville, for defendants in error.

HOWARD, J. This eminent domain proceeding was filed by the plaintiffs, State of Tennessee and Tennessee Department of Highways and Public Works on relation of Roy H. Beeler, Attorney General, and Sevier County, to condemn and acquire the fee simple title to 7.2 acres of land to be used in the construction of a Scenic Highway through the Foothills Parkway of the Great Smoky Mountains National Park. The land acquired was owned by the defendants Jack C. Stroud and wife, Hazel O. Stroud, and is located on the east side of Little Pigeon River between Pigeon Forge and Gatlinburg in Sevier County. The strip condemned averages from 200 to 250 feet in width and is about 1300 feet in length, and runs parallel with the Little Pigeon River.

The plaintiffs filed their petition for condemnation in the Circuit Court of Sevier County on August 28, 1953, and a jury of view awarded the defendants $5,250 for their land and $250 as incidental damages, making a total of $5,500. Both sides filed exceptions to the jury of view's report and prayed an appeal to the Circuit Court where a regular jury awarded the defendants $5,000 for the land taken with no incidental damages. Defendants filed a motion for a new trial which was overruled, and they have appealed to this court, assigning errors (1) that plaintiffs had no authority to acquire a fee simple title to their land; (2) that Sevier County had no authority to participate in the acquisition of their land; (3) that the trial judge committed error in instructing the jury with respect to the measure of their damages, and (4) that

the trial judge committed error in refusing to charge their special request.

The record discloses a sharp conflict in the evidence as to the value of the 7.2 acres of land condemned. For the defendants there was evidence that the 7.2 acres contained a deposit of very valuable sandstone rock, for which there was a demand in the construction of buildings and for flagstone; that because of this valuable deposit the tract condemned was worth $10,000 an acre. On the other hand the plaintiffs' evidence showed that only a small amount of the stone had ever been quarried; that it was of such low grade as to have no market value, and added little or nothing to the value of the land; that the value of the land condemned did not exceed $5,000. Thus there was substantial material evidence to sustain the jury's verdict of $5,000, and this has been conceded by the defendants.

In support of the first assignment that the plaintiffs were without authority to acquire the fee simple title to the land in question, the defendants rely upon a written contract entered into between the Commissioner of Highways and Public Works of the State of Tennessee and the Public Roads Administration of the Department of Interior of the United States, dated April 1, 1948, which makes no reference to acquiring the fee simple title to the land but refers only to "the acquisition of rights-of-way."

It is argued that where the interest to be taken is not expressly stated, and an easement will be sufficient to satisfy the purpose, that the condemnor is presumed to take no greater interest than an easement; that the right to condemn the fee will not be sustained unless expressly given by statute in language that is clear and not subject to uncertainty or doubt, and to sustain their position

they rely upon the rule stated in Clouse v. Garfinkle, 190 Tenn. 677, 231 S. W. 2d 345, wherein it was held, among other things, that statutes authorizing the condemnation of land for public purposes are strictly construed against the condemnor. Under authorities hereinafter cited, we think this rule is not controlling here.

In 1926 the Congress of the United States passed the original Act establishing the Great Smoky Mountains National Park. This Act provided, among other things, how the lands within the defined boundaries of the Park should be acquired and the title thereto vested, said provisions reading, as follows:

*"That when title to lands within the acres hereinafter referred to shall have been vested in the United States in fee simple* there shall be, and are hereby, established, dedicated, and set apart as public parks for the benefit and enjoyment of the people, \* \* \* the tract of land in the Great Smoky Mountains, in the States of North Carolina and Tennessee, being approximately seven hundred and four thousand acres, recommended by the Secretary of the Interior in his report of April 14, 1926, which area, or any part or parts thereof as may be accepted on behalf of the United States in accordance with the provisions hereof, shall be known as the Great Smoky Mountains National Park; Provided, that the United States shall not purchase by appropriation of public moneys any land within the aforesaid areas, but that such lands shall be secured by the United States only by public or private donation." C. 363, Sec. 1, 44 Stat. 616. (Italics supplied.) (See Ch. 54 Pub. Acts of Tenn. for 1927.)

"The Secretary of the Interior is hereby authorized, in his discretion, to accept as hereinafter pro-

vided on behalf of the United States title to the lands referred to in section 403 of this title * * *, and with the $1,066,693 which has been subscribed by the State of Tennessee and the Great Smoky Mountains Conservation Association and by the Great Smoky Mountains (Incorporated) (North Carolina) and with other contributions for the purchase of lands in the Great Smoky Mountains National Park area." Title 16 U. S. C. A. Sec 403a.

In 1938 the Congress amended the Act of 1926 by authorizing the Secretary of the Interior to "acquire on behalf of the United States by purchase, at prices deemed by him to be reasonable, the lands needed to complete the Great Smoky Mountains National Park in the State of Tennessee, in accordance with the provisions of sections 403, 403a, * * *." Title 16 U. S. C. A. Sec. 403i

In 1944 the Congress passed an additional Act authorizing the Secretary of the Interior to accept on behalf of the United States donation of lands for the establishment of the "Foothills Parkway" through which the highway in question runs, the Act reading, as follows:

"The Secretary of the Interior is authorized to accept, on behalf of the United States, donations of land and interests in land in the State of Tennessee for the construction of a scenic parkway to be located generally parallel to the boundary of the Great Smoky Mountains National Park and connecting with the park, in order to provide an appropriate view of the park from the Tennessee side. The right-of-way to be acquired for the parkway shall be of such width as to comprise an average of one hundred and twenty-five acres per mile for its entire length. *The title to real property acquired pursuant to this section shall be satisfactory to the Secretary of the*

*Interior. All property acquired pursuant to this section shall become a part of the Great Smoky Mountains National Park upon acceptance of title thereto by the Secretary, and shall be subject to all laws, . rules, and regulations applicable thereto.''* Feb. 22, 1944, c. 28, 58 Stat. 19; Title 16 U. S. C. A. Sec 403h-11. (Emphasis supplied.)

Prior to 1926 and subsequently thereto, the State of Tennessee passed numerous laws to comply with the foregoing provisions of the Acts of Congress in the development of the Great Smoky Mountains National Park.

Under Chapters 55 and 57 of the Acts of 1925 and Chapter 54 of the Acts of 1927, the State of Tennessee was authorized to acquire a large body of land to be turned over to the United States for inclusion in the Great Smoky Mountains National Park.

By Chapter 54, Public Acts of 1927, a seven member Commission, known as the '' 'Tennessee Great Smoky Park Commission,' '' was created. Among other things this Commission was empowered to acquire *title* in the name of the State to any lands situated within the Park area, as provided by the 1926 Act of Congress, and to carry out its duties the Commission was ''vested with the power of eminent domain to acquire for, in behalf of, and in the name of the State of Tennessee, and to condemn, for park purposes, any lands within the area'', this power being expressly limited to a period of 5 years from the date of the passage of the Act. It was further provided that ''Power is hereby conferred on the Congress of the United States to pass such laws as it may deem necessary *for the acquisition of the said lands* and for incorporation of such National Parks''. (Italics supplied.)

By Chapter 2, Public Acts of 1931, Extra Session, Chapter 54 of the Public Acts of 1927 was amended so as to

extend the time within which the power of eminent domain was to be exercised by the Tennesseee Great Smoky Park Commission until April 27, 1934, the 1931 Act reciting that the 5 year period would expire before some of the pending suits "are finally determined". This Act further amended the 1927 Act by enlarging the area over which the Commission could exercise the power of eminent domain to include all the lands within the Park boundaries as defined and designated by the Secretary of the Interior, said lands being "necessary for the establishment of said park and which can not be acquired at their reasonable value unless the power of eminent domain be granted, and the title to some of which is so questionable that a condemnation suit against all possible claimants is the only practicable way to procure a good, *fee simple title,* * * *." (Italics supplied.)

By Chapter 87, Public Acts of 1945, the State of Tennessee was authorized to acquire the necessary rights-of-way for the construction of the present Scenic Highway or Parkway by the Federal Government within the boundaries of the Park, said Act providing, as follows:

"Be it enacted by the General Assembly of the State of Tennessee, That the State of Tennessee, acting through its Commissioner of Highways and Public Works and with the approval of the Governor, is hereby authorized to acquire by gift, purchase or condemnation under the laws of eminent domain as said laws now exist or may hereafter be enacted a right-of-way extending generally parallel to the boundary line of the Great Smoky Mountains National Park and connecting with the Parkway, which right-of-way shall be used by the United States of America for the purpose of the construction thereon of a scenic highway or parkway so as to provide an appropriate view

of the Park from the Tennessee side, said road or parkway to begin approximately at Cosby in Cocke County, Tennessee and extend to approximately Montvale Springs in Blount County, Tennessee. Said projected highway or parkway is referred to in the records of the Department of the Interior, National Park Service, as the 'Foothills Parkway', and is referred to as Chapter 28, 2d Session, Public Law 232 of the 78th Congress, embraced in House Resolution 1388. *It is the purpose of this Act to authorize compliance by the State with the requirements of any applicable Statute enacted by the Congress of the United States, whether now in force or hereafter enacted.*

"The State is authorized to acquire in the manner aforesaid all necessary parkways and rights-of-way for the highway construction and for the parkways as proposed by the United States Government which may be determined upon by the Commissioner of Highways and Public Works, with the approval of the Governor, representing the State of Tennessee, and by the proper representatives of the United States Government, the width and extent of the rights-of-way and parkways to be acquired to be in compliance with the requirements of the United States Department of Interior, National Park Service. Payment for said property so authorized to be acquired shall be made out of general highway funds of the State." (Emphasis supplied.)

Subsequently Chapter 87 was amended by Chapter 118, Public Acts of 1945, and was again amended by Chapter 146, Public Acts of 1947, which Act also repealed Chapter 118. Among other things Chapter 146 contained the fol-

lowing provisions with reference to the highway in question:

" 'Be. it enacted by the General Assembly of the State of Tennessee That when the rights-of-ways referred to in the caption hereof have been acquired by the State and when the Federal Government, acting either through the Public Roads Administration or the National Park Service, has entered into a written contract with the State Highway Department to construct and maintain said Scenic Highway, or when any other proper agency of the Federal Government has entered into such contract with the State, the Commissioner of Highways and Public Works of the State, with approval of the Governor endorsed upon the instrument of conveyance, shall then be authorized to convey by appropriate deed said rights-of-way to the Federal Government or a designated agency thereof; * * *. Any such deed so executed shall be approved as to form and legality by the Attorney-General of the State, said approval to be evidenced by his signature thereon.' "

By Chapter 26, Public Acts of 1951, the Commissioner of Highways and Public Works of the State of Tennessee or any County of the State was authorized to acquire by the exercise of the power of eminent domain such interest and title in land to be used for highways, etc., as said Commissioner may deem desirable, this Act reading, as follows:

"Be it enacted by the General Assembly of the State of Tennessee, That the Commissioner of Highways and Public Works of the State of Tennessee or any county of the State is hereby authorized to acquire by the exercise of the power of eminent domain such interest and title in land to be used for the con-

struction or reconstruction of any road, highway or freeway or parkway as said Commissioner may deem desirable or as may be necessary in order to secure Federal Aid in the construction or reconstruction of such road, highway, freeway or parkway.''

■ ■ In the instant case the plaintiffs' petition for condemnation of the land seeks not a ''right-of-way'' or an ''easement'' but specifically recites that ''The Commissioner of the Department of Highways and Public Works of the State of Tennessee deems it desirable and necessary that the lands herein sought to be condemned be acquired in fee simple,'' and the witnesses introduced on behalf of the plaintiffs testified that in their opinion it was necessary for the State to acquire the fee to the land condemned. There was no evidence to the contrary, and under the provisions of the foregoing (1951) Act, we think that the State of Tennessee was authorized to acquire a fee simple title to the land condemned as, under our decisions, ''The determinations of 'public use' by the state or its agencies are entitled to great weight or respect by the courts, since they relate to matters which should and must have been known by the legislative branch.'' City of Knoxville v. Heth, 186 Tenn. 321, 210 S. W. (2d) 326, 328.

■ Furthermore, it seems to be the rule generally that where the Statute expressly or by necessary implication declares that a fee simple title to land be taken, the condemnor will acquire such a fee. Tennessee Power Co. v. Rust, 8 Tenn. Civ. App. 368; 18 Am. Jur., Sec. 114, p. 740; 30 C.J.S., Eminent Domain, Sec. 450, pp. 200, 201; Ann. Cas. 1918A, p. 806.

In the instant case, it definitely appearing from the express provisions of the 1926 Act of Congress as well as subsequent laws enacted by both Congress and the State

of Tennessee, that the title to the lands acquired for the development of the Great Smoky Mountains National Park be vested in fee simple in the United States, it was necessary, in order to comply with these laws, for the State to acquire the fee to the defendants' land.

Under the circumstances, having reached the conclusion that the State of Tennessee has the right to acquire the right-of-way in fee simple, we do not find it necessary to pass on the question of whether Sevier County has any such authority. However, we should point out that Chapter 26, Public Acts of 1951, expressly provides that any County, as well as the Commissioner of Highways and Public Works, shall have such authority if deemed desirable and necessary by said Commissioner.

■ Finally, the defendants complain because the trial court charged the jury that in condemnation cases "the most profitable use to which the land can probably be put in the reasonably near future may be shown and considered as a circumstance bearing upon its market value, but you will not consider alone that purpose for which it is most adaptable, or least adaptable," and in the court's refusal to charge the defendants' request, as follows:

"I instruct you that you must in awarding compensation for the land taken, take into consideration the most valuable and profitable use to which the property is reasonably adapted, and its market value for such use is the amount to which the defendants are entitled for the lands taken."

It is contended that the charge complained of was error on the ground that the undisputed evidence showed that prior to 1948 a stone quarry on the right-of-way condemned had been profitably operated, and that subsequently thereto the operations had ceased while the defendant James O. Stroud was in the Military Service, and

that the defendants, under the undisputed evidence, were entitled to have their special request charged.

With these contentions we are unable to agree, as the only evidence showing that the quarry was ever operated was by the defendants' witness M. S. Miller, who owned the entire tract consisting of 50 acres from 1917 to 1948. Miller testified that during this period of more than 30 years he sold approximately 15 loads of stone, for which he received from $6 to $16 per load, and that to his knowledge no one else had ever operated the quarry. Thus there was no evidence that the defendants themselves had ever profitably operated the quarry, and the profits, if any, from its operation by others, were inconsequential.

■ Under the evidence presented, we think that the court correctly charged the law as to the defendants' measure of damages for the land condemned. The rule recognized in this state with respect to determining the value of land condemned is the fair market value, and in ascertaining this value all the possibilities of the property and all legitimate uses for which it is susceptible are to be taken into consideration. The particular use for which the property is most valuable or to which it is at the time adapted and applied, though proper matters for consideration, is not controlling as to the value. McKinney v. City of Nashville, 102 Tenn. 131, 52 S. W. 781; Alloway v. City of Nashville, 88 Tenn. 510, 13 S. W. 123, 8 L. R. A. 123; Nashville Interurban R. Co., v. Seay, 1 Tenn. Civ. App. 134; 18 Am. Jur., Sec. 242, pp. 875, 876.

■ In Nashville Interurban R. Co., v. Seay, supra, the Court stated the rule, as follows:

"While, as a matter of fact, the owner can not require a company to pay for the particular use he is making of the property, he has the right to have the jury to consider any special uses and adaptabilities

to which the land is shown to be susceptible. If the land is adapted to a special use which enhances its value this value belongs to the owner, and he has the right to demand consideration thereof in estimating the market value. This we understand to be the rule approved by the supreme court of our state in the cases of Alloway v. [City of] Nashville, 88 Tenn. 510, 13 S. W. 123, and McKinney v. Memphis, etc., Hotel Co., 59 Tenn. 104, 131.''

█ Furthermore, immediately following the portion of the charge complained about, the court charged the generally approved rule applicable to fixing the value of the land condemned, as follows:

"You will not speculate on what might occur to the property, or the owner of the property. But you must consider the property, and the value of the property, as if some one had gone to the owner of the property on August 23rd, 1953, with the idea of buying it; that that person was willing to buy, but did not have to buy; and you must consider it further as if the owner was willing to sell, but did not have to sell, and take that property as it was at that time, not as it will be if a road is built, or as it was years before that time, but as it was, as it stood on that date, what you believe under all the facts and circumstances two reasonably prudent persons would agree the reasonable value to have been. In other words, it must be considered as if it were a voluntary sale between two persons with no force applied either way, no absolute requirement that it be either purchased or sold.''

In stating the rule with reference to the market value as the measure of damages, American Jurisprudence says:

"When a parcel of land is taken by eminent do-

main, the measure of compensation to be awarded the owner is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy; in other words the test is the fair market value of the land." Vol. 18, Sec. 242, pp. 875, 876.

Supporting the above rule, there are numerous Tennessee decisions cited in the footnotes.

■ With reference to the defendants' special request, we think that it was properly refused. As previously pointed out, there was a sharp conflict in the evidence as to the value of the land condemned, and had the court charged the special request, it would have excluded from the minds of the jury the plaintiffs' evidence as to the value of the land, and would have left to the jury no alternative but to accept the valuation placed thereon by the defendants' witnesses.

■ The trial judge is under a duty to charge the law applicable to the facts presented in the evidence, and the refusal to give an inaccurate special request is not reversible error. Llewellyn v. City of Knoxville, 33 Tenn. App. 632, 232 S. W. (2d) 568.

It results that all assignments of error are overruled and the judgment below is affirmed at defendants' costs.

McAmis, P. J., and Hale, J., concur.