Ben R. BETTY, III and wife Nancy
Betty, Plaintiffs/Appellees,

v.

The METROPOLITAN GOVERNMENT
OF NASHVILLE AND DAVIDSON
COUNTY, Defendant/Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 7, 1992.

Permission to Appeal Denied by
Supreme Court May 18, 1992.

**2**

James L. Murphy, III, Metropolitan Government Dept. of Law, Nashville, for defendant/appellant.

John W. Wagster, Nashville, for plaintiffs/appellees.

## OPINION

KOCH, Judge.

This appeal concerns a city's liability for damages to a privately-owned dam caused by a rupture in one of its sewerage forced mains. The property owners filed suit in the Circuit Court for Davidson County after the city declined to pay for repairing the dam. A jury awarded the property owners $330,000 on their inverse condemnation claim. The trial court also awarded them $60,000 for their claims under the Governmental Tort Liability Act but merged its award into the jury's verdict and entered a judgment for $330,000. The city has appealed, asserting that the evidence does not support the verdict, that the jury instructions were improper, and that the trial court incorrectly applied the Governmental Tort Liability Act. We have determined that the evidence supports the jury's verdict and that, in the absence of objections from the property owners, the errors and inconsistencies in the jury instructions caused by granting the city's erroneous special requests do not provide grounds for a new trial.

### I.

Ben and Nancy Betty live in a Norman style stone home on nine acres in the Madison community of Davidson County. Their property, which they purchased in 1979, adjoins Cheek Lake, a seven-acre lake created in 1927 when Newman Cheek built a forty-foot dam as part of the Lakewood Water Company. Mr. Cheek built the Bettys' house two years after he built the dam.

A roadway across the dam is the only regular means of ingress and egress to and from the Bettys' house.

In November, 1967, Mr. Cheek and his wife granted an easement to the Metropolitan Government of Nashville and Davidson County to construct a sanitary sewer or storm drain over their property. The dam was included within this easement. The city later constructed a 14–inch sewerage forced main on the easement. A portion of the main is attached to the upstream face of the dam. The main transports sewerage under pressure from the Loves Branch Pumping Station across the easement to intersect with another sewerage forced main.

On the morning of August 23, 1986, Mr. Betty noticed the smell of sewage as he drove across the dam. Upon investigating, he discovered a considerable amount of raw sewage in Cheek Lake. He also saw raw sewage running out of the west bank of Cheek Lake above the dam and flowing over the dam's spillway into the Cumberland River. Mr. Betty immediately reported the problem to the Madison Suburban Utility District who, in turn, notified the Metropolitan Department of Water and Sewerage Services.

A city repair crew did not arrive until late in the afternoon. Their efforts to locate and repair the main were hampered by repeated equipment failures, by the proximity of other water mains to the broken main, and by their inability to shut off the pressure in the main. Thus, for the next thirty-six hours, thousands of gallons of raw sewage were pumped into the ground adjacent to the dam. The sewage infiltrated the dam and found its way into the crevices in the limestone bluffs adjacent to the dam. It eventually began to boil up from the bottom of the lake and to spew from the face of the dam and the limestone bluffs below the dam.

The repair crew was finally able to shut off the pressure in the main on the morning of August 25, 1986. Then they were able to begin repairing a broken pipe connecting the forced main to an air relief manhole near the dam. They completed the repairs to the main some time during the morning of August 26, 1986.

Even before the repairs were completed, Mr. Betty wrote a letter to the mayor complaining of the crew's "gross negligence" and requesting that "my place be restored to its condition prior to this." The mayor responded in a telephone call that the city would "repair any thing they had torn up and that he didn't want a legal fight over it."

Mr. Betty became concerned that the sewage had compromised the dam since it was constructed of soil, compacted clay, and silt covered by a shell of cobblesize pieces of limestone held together with mortar. He hired an engineering firm to evaluate the status of the dam. In October, 1986, the engineering firm reported that it had discovered voids in the interior of the dam. Further tests revealed that the soil from the interior of the dam was being carried out by seepage from the downstream face of the dam.

The engineering firm's final report stated that problems with the dam "combined to create a condition for the dam that suggests that it [is] going to continue to degrade until ultimately failure [will] occur." The engineer who prepared the report informed Mr. Betty that the break in the main had left the dam in a precarious and dangerous condition and that the dam could fail at any minute. He also recommended immediate repairs.

Mr. Betty saw to it that copies of the engineering reports were sent to various responsible city officials. He had a difficult time getting a response or even arranging a meeting with the city but was finally able to meet with the acting director of the Department of Water and Sewerage Services. The acting director declined to send a city engineer to evaluate the dam's condition and suggested that Mr. Betty make the repairs himself and then submit the bill to the city.

Mr. Betty believed that the city had placed him in an untenable position. He could either gamble that the dam would not fail or he could fix the dam and gamble that the city would pay for the repairs.

Because of the serious consequences of the dam's failure, he elected to repair the dam. His engineer designed a remedial plan, and then Mr. Betty paid a contractor $401,553 to fill the voids in the dam and the bluffs by pumping grout into them.

Mr. Betty submitted the repair bill to the city. In April, 1987, the city declined to pay for the repairs. The Bettys filed suit against the city two months later. Their complaint contained nine theories of recovery, including causes of action based on Tenn.Code Ann. § 29–16–123(a) (1980), violation of Tenn. Const. art. 1, § 21, breach of the easement agreement, and negligence.[1] Following a two-day trial, the trial court submitted the condemnation and breach of easement agreement claims to the jury and reserved the negligence claims for its own consideration under the Tennessee Governmental Tort Liability Act.

The jury awarded the Bettys $330,000. Later, the trial court awarded them $60,000 based on its determination that the city's negligence had caused "three separate accidents," each causing the Bettys "at least $20,000 ... in damages." However, the trial court decided that its award should be "included within" the damages awarded by the jury and, therefore, entered a judgment for the Bettys in the amount of $330,000.

## II.

In its first two issues, the city asserts that the trial court should have set aside the verdict because the Bettys failed to make out an inverse condemnation claim. Specifically, it asserts that the proof is deficient because the Bettys did not show that the damages were permanent or that they were caused by an intentional, affirmative act. We find that the Bettys' proof was sufficient both as a matter of fact and as a matter of law.

## A.

Actions brought pursuant to Tenn.Code Ann. § 29–16–123(a) are based on Article 1, Section 21 of the Constitution of Tennessee.[2] They are actions against governmental defendants

> to recover the value of property which has been taken in fact by a governmental defendant even though no formal exercise of the power of eminent domain has been attempted by the government.

*Johnson v. City of Greeneville,* 222 Tenn. 260, 264, 435 S.W.2d 476, 478 (1968).

■ These statutory actions are not strictly based upon contract, property law, or tort principles. *See Coyne v. City of Memphis,* 118 Tenn. 651, 670, 102 S.W. 355, 360 (1907); 11A E. McQuillin, *The Law of Municipal Corporations* § 32.132.20 (3d ed. 1991); Arvo Van Alstyne, *Inverse Condemnation: Unintended Physical Damage,* 20 Hastings L.J. 431, 431, 438 (1969). They provide a constitutional remedy, *Brooksbank v. Roane County,* 207 Tenn. 524, 530, 341 S.W.2d 570, 573 (1960), for unintended physical damage to private property caused by the government's construction, maintenance, and use of a public improvement, *McMahan's v. City of Santa Monica,* 146 Cal.App.3d 683, 194 Cal.Rptr. 582, 587 (1983), and are premised on the policy that the users of public improvements should absorb such losses, not just the affected property owner. *Cumberland Tel. & Telegraph Co. v. United Elec. R.R.,* 93 Tenn. 492, 520, 29 S.W. 104, 111 (1894); *Carter County v. Street,* 36 Tenn.App. 166, 176, 252 S.W.2d 803, 808 (1952); *see also Holtz v. Superior Court,* 3 Cal.3d 296, 475 P.2d 441, 444, 90 Cal.Rptr. 345, 349 (1970); *Albers v. City of Los Angeles,* 62 Cal.2d 250, 398 P.2d 129, 137, 42 Cal.Rptr. 89, 96 (1965); 3 *Nichols' The Law of Eminent Domain* § 8.1[4], at 8–34 (Rev.3d ed. 1989); Daniel R. Mandelker, *Inverse Condemnation: The Constitutional Limits of Public Responsibility,* 1966 Wis.L.Rev. 3, 8.

---

1. The other five theories of recovery in the complaint were: breach of contract, estoppel, improper use of easement, implied contract and unjust enrichment, and nuisance.

2. Tenn. Const. art. 1, § 21 states: "That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

Like any other condemnation action, a Tenn.Code Ann. § 29–16–123(a) claim has three necessary ingredients. First, a person's "property" must be involved. Second, the governmental authority must have "taken" the property. Third, the property must have been taken "without just compensation being made therefor." While seemingly simple on their face, these elements have sometimes proved difficult in their application.

■ Tenn. Const., art. 1, § 21 applies to property of all types. *Duck River Elec. Membership Corp. v. City of Manchester*, 529 S.W.2d 202, 207 (Tenn.1975); *Zirkle v. City of Kingston*, 217 Tenn. 210, 221, 396 S.W.2d 356, 361 (1965). Thus, for the purpose of condemnation and inverse condemnation actions, a property owner's right to ingress and egress is considered to be a property right. *State ex rel. Shaw v. Gorman*, 596 S.W.2d 796, 797 (Tenn.1980); *Illinois Cent. R.R. v. Moriarity*, 135 Tenn. 446, 458, 186 S.W. 1053, 1055–56 (1916); *Tate v. Monroe County*, 578 S.W.2d 642, 644 (Tenn.Ct.App.1978).

■ The concept of "taking" in condemnation cases is not limited to situations involving actual dispossession or complete deprivation. *Shelby County v. Dodson*, 13 Tenn.App. 392, 400 (1930). It is broad enough to include any destruction, restriction, or interruption of the common and necessary use and enjoyment of the property in a lawful manner. *Lea v. Louisville & Nashville R.R.*, 135 Tenn. 560, 574, 188 S.W. 215, 219 (1916); *Barron v. City of Memphis*, 113 Tenn. 89, 92, 80 S.W. 832, 832 (1904); *Jones v. Cocke County*, 57 Tenn.App. 496, 500, 420 S.W.2d 587, 589 (1967). However, the destruction or interruption must be specific to a property owner and must not be shared by the public in general. *Johnson v. City of Greeneville*, 222 Tenn. at 269, 435 S.W.2d at 480; *Lewisburg & Nashville R.R. v. Dudley*, 161

Tenn. 546, 551, 30 S.W.2d 278, 280 (1930); *Illinois Cent. R.R. v. Moriarity*, 135 Tenn. at 453, 186 S.W. at 1054.

■ "Just compensation" is generally limited to the amount of the award in the condemnation case or to the consideration paid by the condemning authority. *East Tennessee Natural Gas Co. v. Peltz*, 38 Tenn.App. 100, 129, 270 S.W.2d 591, 604 (1954); *Fuller v. City of Chattanooga*, 22 Tenn.App. 110, 117, 118 S.W.2d 886, 890 (1938). The rule is premised on the assumption that this amount is sufficient to compensate the property owner for all foreseeable injuries necessarily incident to the construction, operation, and maintenance of a public improvement.

■ The general rule has an exception relevant to this case. Property owners may use Tenn.Code Ann. § 29–16–123(a) to recover damages for the destruction or interruption of the use of their property that neither party had reason to anticipate and that would have been rejected as speculative in the original condemnation proceeding. *Scott v. Columbia Gulf Transmission Co.*, 56 Tenn.App. 258, 269–70, 405 S.W.2d 784, 789 (1965); *Morgan County v. Neff*, 36 Tenn.App. 407, 411–12, 256 S.W.2d 61, 63 (1952); *Fuller v. City of Chattanooga*, 22 Tenn.App. at 117, 118 S.W.2d at 891. This exception is viewed as just as essential to the proper application of Tenn. Const. art. 1, § 21 as the general rule itself. *Jones v. Oman*, 28 Tenn.App. 1, 9, 184 S.W.2d 568, 571 (1944).

■ Tenn.Code Ann. § 29–16–123(a) contains two separate causes of action[3] and two alternative measures of damages. The proper measure of damages in a particular case depends on the property owner's election between the alternative statutory remedies. The amount of damages recoverable under either alternative are not limited by the Governmental Tort Liability Act since

---

**3.** The Supreme Court has held that Tenn.Code Ann. § 29–16–123(a) authorizes both "inverse or reverse condemnation" actions as well as actions "for damages in the ordinary way." *Scott v. Roane County*, 478 S.W.2d 886, 887 (Tenn. 1972); *Johnson v. Roane County*, 212 Tenn. 433, 436, 370 S.W.2d 496, 498 (1963); *Duck River*

*Valley Narrow Gauge R.R. v. Cockrane*, 71 Tenn. (3 Lea) 478, 480–81 (1879). Both actions are generally, albeit ambiguously, referred to as "inverse condemnation" proceedings. *Shelby County v. Barden*, 527 S.W.2d 124, 127 (Tenn. 1975).

Tenn.Code Ann. § 29–20–105 (1980) exempts Tenn.Code Ann. § 29–16–123(a) proceedings from the Act's coverage.

■ The most common measure of damages for "inverse condemnation" causes of action is the same as the measure of damages in condemnation cases—the difference between the fair market value of the property before and after the taking. *Shelby County v. Barden*, 527 S.W.2d 124, 127 (Tenn.1975); *Tate v. Monroe County*, 578 S.W.2d at 645. However, since this court has recently held that the cost to restore a property owner's access to a public street may also be a proper measure of damages in a condemnation case, *State ex rel. Commissioner of Transp. v. Vanatta*, 728 S.W.2d 341, 342 (Tenn.Ct.App.1986), the cost of restoring access may also be a measure of damages.

■ The measure of damages for the alternative cause of action recognized in Tenn.Code Ann. § 29–16–123(a) is not limited to the property's diminished market value. In these cases, the property owner may recover "the value of the land and damages." *Duck River Valley Narrow Gauge R.R. v. Cochrane*, 71 Tenn. at 480. These damages may include, in proper factual circumstances, the cost of returning the property to its original condition. *See Hord v. Holston River R.R.*, 122 Tenn. 399, 410, 123 S.W. 637, 640 (1909).

■ Accordingly, in actions for "damages in the ordinary way" under Tenn.Code Ann. § 29–16–123(a), a property owner's measure of damages is the same as in any other case involving injury to real property. Property owners may recover for the diminished value of their property or for the cost of repairs, whichever is less. *See Killian v. Campbell*, 760 S.W.2d 218, 222 (Tenn.Ct.App.1988); *Fuller v. Orkin Exterminating Co.*, 545 S.W.2d 103, 108 (Tenn.Ct.App.1975).

## B.

■ Liability under Tenn. Const. art. 1, § 21 and Tenn.Code Ann. § 29–19–123(a) is predicated on interference with a property interest, not on the particular conduct leading to the interference. The Supreme Court has pointed out that "any action ... in carrying out the purposes for which [an easement] was created, which destroys, interrupts or interferes with the common and necessary use of real property of another is a 'taking' of such property." *Pleasant View Util. Dist. v. Vradenburg*, 545 S.W.2d 733, 735 (Tenn.1977); *see also McMahan's v. City of Santa Monica*, 194 Cal.Rptr. at 589. Accordingly, as long as a "taking" has occurred, whether the taking was intentional, unintentional, or negligent is irrelevant. *Holtz v. Superior Court*, 475 P.2d at 444, 90 Cal.Rptr. at 348–49; *Marin v. City of San Rafael*, 111 Cal. App.3d 591, 168 Cal.Rptr. 750, 752 (1980).

■ In order to amount to a "taking," the interruption or interference must be serious or significant, *Johnson v. City of Greeneville*, 222 Tenn. at 269, 435 S.W.2d at 480; *Barron v. City of Memphis*, 113 Tenn. at 92, 80 S.W. at 832–33, and must produce a particular and direct effect on the property involved not shared by the general public. *Johnson v. City of Greeneville*, 222 Tenn. at 269, 435 S.W.2d at 480; *Illinois Cent. R.R. v. Moriarity*, 135 Tenn. at 453, 186 S.W. at 1054. The disruption must be more than "momentary," *Obion County v. Edwards*, 159 Tenn. 491, 493, 19 S.W.2d 236, 237 (1929), but need not be permanent or irremediable as long as it affects the "usable and rental or permanent value of the property." *Louisville & Nashville Terminal Co. v. Lellyett*, 114 Tenn. 368, 402, 85 S.W. 881, 889 (1905). Thus, a Tenn.Code Ann. § 29–16–123(a) action is the proper way to seek damages for the actual physical injury to real property proximately and directly caused by the operation and use of a public easement for the purposes for which it was intended.

## C.

The Bettys' proof creates a jury question on their Tenn.Code Ann. § 29–16–123(a) claim. The city obtained a permanent easement across the Bettys' property and constructed a sewerage forced main on the easement. While being used for its intended purpose, the main broke, significantly

interfering with the Bettys' normal use of their property. The damage caused by the broken main was permanent, although not irremediable, and was not shared by the public in general. As a result of the damage, the Bettys were faced with the imminent prospect of losing not only their dam but also their access to the public road.

■ When the city constructed the main across the face of the Bettys' dam, it took the calculated risk that damage to the adjacent property could someday occur. At the time the easement was originally granted, the Bettys' predecessors in title would not have been entitled to additional compensation because of this risk. It would have been considered speculative because of the presumption that the city would operate the system carefully and skillfully. *Alloway v. City of Nashville,* 88 Tenn. 510, 525, 13 S.W. 123, 126 (1890). Once the Bettys' use of their property was seriously impaired through no fault of their own, Tenn. Const. art. 1, § 21 and Tenn. Code Ann. § 29–16–123(a) required the city, on behalf of all those who benefitted from the sewers, to bear the burden of the damages.

■ Property owners in these cases are expected to mitigate their damages and are not entitled to damages for "unnecessary loss." *Cumberland Tel. & Telegraph Co. v. United Elec. R.R.,* 93 Tenn. at 525, 29 S.W. at 112. Accordingly, when faced with the immanent loss of their dam, the Bettys had no alternative other than to repair the damage after the city declined to do so. They could not reasonably have allowed the dam to fail because the loss would then have been viewed as "unnecessary" and would have also exposed them to substantial liability to the downstream property owners.

By refusing to restore the Bettys' dam to its pre-August 23, 1986 condition, the city became liable to the Bettys either for the diminished value of their property or for the costs of repairing the dam, whichever was less. The record contains evidence that the costs of repairing the dam were far less than the diminished value of the property or the costs that would have accrued had the Bettys done nothing and permitted the dam to fail. Accordingly, the city was not entitled to a judgment notwithstanding the verdict or to a new trial insofar as the Bettys' Tenn.Code Ann. § 29–16–123(a) claim is concerned.

### III.

We turn next to the Bettys' theories of recovery based on breach of the easement contract and negligence. The trial court submitted the former to the jury along with the Bettys' "taking" claims and disposed of the latter itself in accordance with the Governmental Tort Liability Act. Under the facts of this case, we find that these two claims should not have been decided on their merits.

The Bettys sought to recover "all sums reasonably expended ... for repair of the damages caused by the defendant." These damages consist of the damage to their dam caused by the rupture in the city's sewerage main that spanned the dam. Reduced to its essence, the complaint seeks recovery for the serious disruption of the Bettys' property rights.

■ The use of an easement that interrupts a property owner's use of its property is a "taking" for the purposes of Tenn. Const. art. 1, § 21 and Tenn.Code Ann. § 29–16–123(a). *Pleasant View Util. Dist. v. Vrandenburg,* 545 S.W.2d at 735; *Scott v. Columbia Gulf Transmission Co.,* 56 Tenn.App. at 269–70, 405 S.W.2d at 789. A single taking gives rise to only one Tenn. Code Ann. § 29–16–123(a) claim. *See Hawkins v. Dawn,* 208 Tenn. 544, 547–48, 347 S.W.2d 480, 481 (1961). Thus, it was unnecessary for the Bettys to advance eight other theories of recovery in addition to their claim under Tenn.Code Ann. § 29–16–123(a). These theories sought identical relief and need not have been submitted to the jury once the Bettys made out a prima facie Tenn.Code Ann. § 29–16–123(a) claim.[4]

---

4. The trial court implicitly recognized the duplicative nature of the Bettys' claims when it decided to include its award for damages under the Governmental Tort Liability Act within the

■ There is an additional reason why the Bettys' breach of the easement contract claim should not have been presented to the jury. The easement contract itself provides only that the city will restore the property to its original condition after the completion of construction and that the property owners did not waive any claim for damages caused by the construction. The contract contains no language that could be construed as an agreement by the city to compensate the Bettys for damage to their property caused by the maintenance of the easement. In the absence of any proof of an enforceable agreement concerning later damages, the trial court should have directed a verdict on the Bettys' breach of contract claim.

■ The city is not entitled to a new trial solely because the trial court included a breach of contract charge in its instructions to the jury. The city itself requested the instruction, and the instruction more likely than not did not prejudice the city's case in the jury's eyes. *See* Tenn.R.App.P. 36(a), (b). Instructions that correctly state the law but have no basis in the facts of the case, while not proper, can be harmless. *Langford v. Arnold*, 707 S.W.2d 521, 523 (Tenn.Ct.App.1985). While the proof did not make out a breach of contract claim, it supported recovery under Tenn.Code Ann. § 29–16–123(a).

## IV.

As a final matter, we turn to the city's assertions that the jury instructions were erroneous and inconsistent. While we agree that the instructions were deficient, we do not agree that the city is entitled to a new trial because of them. The errors and inconsistencies in the charge resulted from the trial court's decision to grant several of the city's special requests. Under Tenn. R.App.P. 36(a), parties responsible for an error are not entitled to relief on appeal.

### A.

■ The parties' disagreement concerning the elements of a Tenn.Code Ann. § 29–16–123(a) claim were reflected in their special requests for jury instructions. At the Bettys' request, the trial court told the jury

I instruct you that if you find that the broken sewer pipe caused the damage complained of to the plaintiffs' dam and property and if you find that these damages without remedial action would have caused a restriction or interruption of the common and necessary use and enjoyment of the plaintiffs' property so as to constitute a taking, then you may return a judgment in favor of the plaintiffs.

However, immediately after giving this instruction, the trial court, in response to one of the city's special requests, told the jury that

Under the inverse condemnation statute breaking of the sewerage line must have resulted from the intentional affirmative acts of the Metropolitan Government, not from mere negligence on the part of Metropolitan Government.

Later, at the city's request, the trial court told the jury:

One who seeks to recover for inverse condemnation or the taking of private property by a governmental entity without just compensation may recover only if it be established that the injury to his property is permanent in nature. If you find that the injury to the plaintiff's property was corrected by the expenditure of labor or money, your verdict must be for the defendant on the inverse condemnation claim.

However, immediately after giving this instruction, the trial court, at the Bettys' request, gave the following instruction:

I instruct you that with regard to whether or not it is liable in damages, the Metropolitan Government as a defendant is judged by standards that are equally applicable to any lawful user of the easement. In other words, the de-

damages awarded by the jury. In light of our determination that the trial court should not have considered the Bettys' negligence claims,

we need not reach the issue concerning the manner in which the trial court applied the Governmental Tort Liability Act.

fendant Metropolitan Government is not protected by any governmental immunity insofar as it relates to the government's use of its power to take property by acquisition or by easement.

\* \* \* \* \* \*

If the owner of property abutting a public easement suffers a damage to that property as a direct result of a public improvement, it constitutes a taking of the property in the assess [sic] that he is to be compensated by way of damages. It is not necessary for the owner to be entirely deprived of the use of the property. Any destruction, restriction or interruption of the common, necessary use may constitute a taking for the purposes of the statute allowing recovery to a land owner.

Finally, in accordance with one of the city's special requests, the court instructed the jury:

In this action the plaintiffs have the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

(1) That permanent injury to plaintiffs' property occurred as a direct result of the defendant making a public improvement.

(2) That the defendant complied with all the requirements of its charter in entering into a contract with plaintiffs to repair the damage to plaintiffs' property.

(3) That plaintiffs repaired the damage to their property in the belief that the defendant had agreed to pay for all of the costs of the repair.

(4) That plaintiffs were unaware and had no means of obtaining the knowledge that the Mayor of the Metropolitan Government lacked the knowledge [sic] to unilaterally enter into contracts on behalf of the defendant.

(5) That the plaintiffs incurred the cost of repair without knowledge that the defendant had not committed to pay for the cost of the repair.

(6) That the easement agreement granted by plaintiffs' predecessor in title to defendant provided that defendant would be responsible for any damages

resulting from the break in the sewage force main.

(7) The nature and extent of the injuries claimed to have been so suffered, the elements of the plaintiffs' damages, and the amount thereof.

### B.

▆▆▆ Trial courts should give accurate instructions couched in plain and understandable terms. *Street v. Calvert,* 541 S.W.2d 576, 584 (Tenn.1976); *Grissom v. Metropolitan Gov't,* 817 S.W.2d 679, 685 (Tenn.Ct.App.1991); *Gross v. Nashville Gas Co.,* 608 S.W.2d 860, 872 (Tenn.Ct.App. 1980). These instructions, when viewed as a whole, should inform the jury of the legal principles applicable to the issues in the case, *Mitchell v. Smith,* 779 S.W.2d 384, 390 (Tenn.Ct.App.1989), and should fairly embody the parties' theories of the case that are supported by the pleadings and the proof. *Cole v. Woods,* 548 S.W.2d 640, 642 (Tenn.1977); *Street v. Calvert,* 541 S.W.2d at 584.

▆▆▆ Trial courts should not, however, give inconsistent, misleading, or confusing instructions. They are the final arbiters of the legal principles properly applicable to a particular case. *Stroud v. State,* 38 Tenn.App. 654, 669, 279 S.W.2d 82, 89 (1955). Thus, when the parties' requests for instructions are inconsistent, the trial court should limit its instructions to those containing the correct statements of the law and should reject those that are erroneous or incomplete. *See Morton v. Martin Aviation Corp.,* 205 Tenn. 41, 53–54, 325 S.W.2d 524, 530 (1959); *Mitchell v. Smith,* 779 S.W.2d at 390.

### C.

No conclusion can be reached other than that the jury instructions in this case are inconsistent and contain erroneous statements of law. These errors and inconsistencies are, however, due to the trial court's decision to use several of the city's requests for instructions that contained unduly narrow, erroneous statements of the elements of a Tenn.Code Ann. § 29–16–

123(a) cause of action. The Bettys' requested instructions, on the other hand, were substantially accurate. Therefore, we are confronted with a situation where the errors in the charge were brought about by the city.

Parties are not entitled to relief on appeal based upon errors for which they are responsible. Tenn.R.App.P. 36(a). Accordingly, the city is not entitled to a new trial because of the errors in the trial court's charge. This court has the prerogative under Tenn.R.App.P. 36(b) to grant relief when failing to correct an error that "would result in prejudice to the judicial process." We do not view errors in instructions in one particular case as rising to this level, especially when the party most directly affected by the error is not seeking a new trial.

The errors in the instructions probably resulted in a lower damage award than what the Bettys might otherwise have recovered. However, the Bettys made a calculated, strategic decision not to seek a new trial. Since the Bettys have decided to accept the jury's verdict, we see no just reason to require them to run the gamut of a new trial.

## V.

We affirm the judgment awarding the Bettys $330,000 and remand the case to the trial court for whatever further proceedings that may be required. We also tax the costs to the Metropolitan Government of Nashville and Davidson County.

TODD, P.J., and FRANKS, J., concur.