IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 8, 2000 Session

## DORIS RACKLEY, ET AL. v. DEKALB COUNTY FIRE DEPARTMENT, ET AL.

Appeal from the Circuit Court for DeKalb County
No. 7513     John Turnbull, Judge

No. M2000-00885-COA-R3-CV - Filed October 25, 2000

A purchaser of real property invited the DeKalb County Volunteer Fire Department to burn down a house on the property for training purposes. After the house was destroyed, the seller re-took possession of the property, because the buyer failed to pay the rest of the purchase price. The seller brought suit against the County for inverse condemnation and trespass. The trial court dismissed the complaint. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and HOLLY K. LILLARD, joined.

Frank Buck and Lena Ann Buck, Smithville, Tennessee, for the appellants, Doris Rackley, Hazel Maynard, Virginia Rackley, and the heirs at law of the late Mary Emma Rackley Johnson, and Pat Farler, Eva Cooper, Barbara Knupp, and the heirs at law of Norval Rackley.

Michael E. Evans, Nashville, Tennessee, for the appellee, DeKalb County Fire Department, an agency of DeKalb County, Tennessee.

## OPINION

### I. A PIECE OF PROPERTY IS SOLD, AND A HOUSE BURNS

After Mary Johnson died, the ownership of a seven acre piece of land at 6612 McMinnville Highway passed to her heirs. A house, a barn and two outbuildings were located on the property. The other heirs gave Doris Rackley, Mrs. Johnson's brother, permission to manage the property and to sell it on their behalf. Mr. Rackley listed the property with a real estate agent for an asking price of $78,000. The property failed to sell, and after six months the contract expired. Fred and Paula Rowland subsequently contacted Mr. Rackley, and he agreed to sell the property to them.

The printed contract of sale, which was signed by the Rowlands and by Mr. Rackley on November 13, 1997, recited a purchase price of $50,000, with payment of $2,000 in earnest money by the Rowlands. The Rowlands brought only $1,000 to the contract signing. They added a hand-written entry to the contract, which read, "1000.00 will be paid 11/19/97 on Wednesday," and initialed it. However, the Rowlands made no payments on the contract other than the initial $1,000.

The contract stated that the sale would be closed before April 1, 1998, and that time was of the essence. The closing was later extended to April 30. After signing the contract, the Rowlands began to treat the property as their own. They allowed one individual to remove nursery stock from the property, and another to remove lumber from the exterior of the barn.

Mr. Rowland also contacted Donny Green, the chief of the DeKalb County Fire Department, told him there was a structure on his property that he wanted destroyed, and asked if the Fire Department could destroy it as part of their practice. Mr. Rowland signed a Release of Liability, authorizing the Fire Department to destroy an "abandoned wood frame house" located at 6612 McMinnville Highway. He was on the property and he re-affirmed that he was its owner, on the day in late April when Chief Green and his men burned the house down as a training exercise.

After Mr. Rackley visited the property and saw the destruction, he contacted his attorney, who sent a letter dated April 30, 1998 to Mr. Rowland, advising him that "Mr. Rackley is standing prepared and ready to complete this contract." The letter went on:

> In the event that you are unable to tender the balance owed of $49,000, then be advised that Mr. Rackley shall take immediate possession of the aforesaid property . . . . Notice is hereby given do not come to this property if you do not tender the monies.

Mr. Rowland failed to respond. On June 2, 1998, Mr. Rackley and the other heirs filed suit against the Rowlands, asking for specific performance on the contract. The suit also asked for damages from the individuals who had taken the nursery stock and the barn lumber, and from the DeKalb County Fire Department, acting as an agent of DeKalb County.

On June 23, 1999, the plaintiffs non-suited Fred and Paula Rowland without prejudice. The other defendants were also non-suited, with the exception of DeKalb County and the DeKalb County Fire Department. The case went to trial against the governmental defendants alone, on theories of "negligent trespass" and inverse condemnation. At the conclusion of the trial, the trial court dismissed the complaint. The court's judgment, filed March 13, 2000, recited its findings of fact and conclusions of law: that the County was immune from liability for trespass, that inverse condemnation was inapplicable, and that the burning of the house did not cause a reduction in the value of the property. This appeal followed.

## II. TRESPASS AND EQUITABLE CONVERSION

The plaintiffs argue on appeal that the fire chief was negligent in failing to ascertain the true owner of the property before burning the house down. They contend that Mr. Green could easily have discovered that legal title was in the hands of others, even without making a trip to the courthouse to search the county records. In addition to his position as chief of the volunteer fire department, Mr. Green was also the agricultural agent for the county, and the plaintiffs observed that a search of his own records would have revealed a tobacco allotment for the land, held in the name of Doris Rackley.

We believe this argument is beside the point. Mr. Rowland had entered into a valid contract to purchase the property. An executory contract for the sale of land operates as an equitable conversion, with the result that while legal title remains in the hands of the vendor, the purchaser is considered to be the equitable owner. A corollary is that as the equitable owner, the purchaser bears the risk of loss on the property. *See Equitable Conversion*, 27A A.L.R. § 13.

There was no provision in the contract of sale that would have had the effect of postponing Mr. Rowland's right to enter or possess the property until after closing. He was thus in rightful possession of the property at the time he gave Mr. Green permission to burn the house. The fact of Mr. Rowland's possession is admitted in the plaintiffs' sworn complaint, and can also be inferred from the plaintiffs' letter of April 24, threatening to re-take possession if Mr. Rowland did not fulfill his side of the bargain.

Any theory of liability against the County based upon negligence or trespass must therefore fail. If the Fire Department had the permission of the equitable owner to enter on the land, such entry does not amount to a trespass, and the County cannot be held liable for failing to discover that the equitable title and the legal title to the land were held by different parties. This does not necessarily mean that the plaintiffs are left without a remedy. However, that remedy cannot be obtained from the County, but only from the Rowlands, who by failing to close by April 30, opened themselves up to liability for any damage occurring to the property while it was in their possession.

## III. INVERSE CONDEMNATION AND VALUATION

As an alternative to their claim in trespass, the plaintiffs have argued that the County should be held liable under a theory of inverse condemnation. They contend that the burning of the house amounted to a "taking" of their property for the governmental purpose of training young firefighters. If we accept their argument that the burning of the house was a taking for the purposes of the inverse condemnation statute, Tenn. Code. Ann. § 29-16-123(a), then the measure of damages would be the difference between the fair market value of the property before and after the taking. *Betty v. Metropolitan Government*, 835 S.W.2d 1, 7 (Tenn. Ct. App. 1992).

However the trial court made a finding of fact that "[t]he proof introduced by Plaintiffs did not establish depreciation of value as to the real estate at issue, and a claim of inverse condemnation

is not established." Findings of fact by the trial court in civil actions are presumed to be correct, unless the preponderance of the evidence is otherwise. Rule 13(d), Tenn. R. App. P.

The evidence tending to support the plaintiffs' position that the actions of the Fire Department reduced the value of the property included the testimony of Doris Rackley and Nolan Turner. Mr. Rackley testified that he believed the property to have been worth $64,000 with the house on it. Mr. Turner, a seasoned inspector for the Farm Bureau, testified that he had appraised the house for insurance purposes in April of 1997 at $12,000. Mr. Turner noted that the presence of the house might increase the commercial potential of the property, since numerous nursery yards in Warren and DeKalb Counties use a trailer or an old building on the premises to help them conduct their business.

However Mr. Turner also stated on direct that the $50,000 price that the Rowlands agreed to pay for the property would be about what it was worth at that time. On cross-examination, he testified that the best way to determine the value of any given piece of property is through a sale of that property, and that the very best kind of sale for assessing fair market value would be a public auction.

As we stated above, Mr. Rackley signed a contract of sale on November 13, 1997, in which he agreed to sell the house to the Rowlands for $50,000. In April of 1998, the house was burned, and the Rackleys subsequently filed suit against the Rowlands for specific performance on the $50,000 contract, but subsequently non-suited them. On May 18, 1999, the property was sold at public auction to B.F. Hooper for $50,000. After examining the entire record, we do not believe that the plaintiffs managed to prove that the value of their property was reduced as a result of the actions of the DeKalb County Volunteer Fire Department.

**IV.**

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of DeKalb County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.