Joe C. MEIGHAN, Jr., for himself,
and others similarly situated,
Plaintiff/Appellant,

v.

U.S. SPRINT COMMUNICATIONS
COMPANY, Defendant/Appellee.

Supreme Court of Tennessee,
at Knoxville.

April 29, 1996.

Rehearing Denied July 1, 1996.

Donald K. Vowell, A. James Andrews, Thomas A. Snapp, Knoxville, for Appellant.

J. Anthony Farmer, Knoxville, for Amicus Curiae.

John B. Rayson, John C. Burgin, Jr., Adrienne L. Anderson, Knoxville, for Appellee.

## OPINION

WHITE, Justice.

In this case we are called upon to examine the application of Rule 23, Tennessee Rules of Civil Procedure to actions involving injuries to real property and to determine the

available causes of action and appropriate measure of damages in such actions.

## I.

Plaintiff Meighan is a property owner in Knox County, Tennessee. Southern Railway Company has a railroad right of way across plaintiff's land. Defendant U.S. Sprint is a communications company who entered into a license agreement with Southern Railway allowing the installation of fiber optic cable on 230 miles of railroad right of way in Tennessee. Plaintiff's land was among those tracts upon which Sprint's cable was installed. Sprint did not avail itself to the statutory condemnation procedures, did not get plaintiff's consent, and did not offer plaintiff compensation.

As a result of Sprint's actions, plaintiff filed suit in the Knox County Circuit Court alleging that the installation of the cable constituted a "taking" of plaintiff's land and a trespass over plaintiff's land. Plaintiff sought statewide class action certification. In his prayer for relief, plaintiff sought both compensatory and punitive damages.

The trial court granted class certification only as to affected property owners in Knox County. Sprint moved to dismiss the trespass cause of action and the punitive damages claim. The court dismissed the trespass claim, but allowed the claim for punitive damages to stand.

Both parties sought and were granted interlocutory and extraordinary appeals. Under Rule 9, Tennessee Rules of Appellate Procedure, plaintiff challenged the single-county class action limitation. By virtue of a Rule 10 appeal, plaintiff challenged the dismissal of the trespass cause of action. Defendant challenged, also by virtue of Rule 10, the certification of the class action. Under Rule 9, defendant challenged the ruling allowing plaintiff's punitive damages claim to stand. The Court of Appeals affirmed the

dismissal of the trespass cause of action, reversed the trial court and dismissed the punitive damages claim and the class action certification, thereby removing the need to address the propriety of the single-county limitation. We granted Rule 11 review to consider the class action certification, the nature of the cause of action, and the relief available.

The resolution of this case is affected by our recent decision in *Buhl v. U.S. Sprint Communications Co.*, 840 S.W.2d 904 (Tenn. 1992). There we held that the installation of telephone cable constituted a taking of the landowner's property within the meaning of the law of eminent domain. Accordingly, the property owner was entitled to compensation. *Buhl v. U.S. Sprint Communications Co.*, 840 S.W.2d at 913. Since *Buhl* clearly establishes that plaintiff is entitled to relief, we turn our attention in this appeal to the appropriateness of class action certification, the nature of the cause of action, and the available relief.

## II. Class Actions under Rule 23

### A. Prerequisites to Class Actions

The complaint and amended complaint in this action were brought as class actions under Rule 23, Tennessee Rules of Civil Procedure. Both alleged that the class consisted of all persons, which included legal entities, who own land in the state of Tennessee "across which Defendant Southern Railway Company (SRC), has maintained a railroad right-of-way, and/or across which the Defendant Sprint has constructed a fiber optics communication system." The class was further divided into three subclasses, two of which were distinguished by the manner of the railroad's acquisition of the right of way and the third of which consisted of land over which the railroad had no right of way. The complaint and amended complaint alleged all the prerequisites to class action filings [1] set

---

1. Rule 23.01 of the Tennessee Rules of Civil Procedure provides that a class action may be brought by a representative party on behalf of all members of the class only if:

 (1) the class is so numerous that joinder of all members is impracticable,

 (2) there are questions of law or fact common to the class,
 (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
 (4) the representative parties will fairly and adequately protect the interest of the class.

forth in Rule 23.01 and requested certification pursuant to subsection one or two of Rule 23.02, or alternatively, pursuant to subsection three.

In addition to the prerequisites to a class action set forth in Rule 23.01, Rule 23.02 further limits the situations in which a class action can be maintained to three. The first, set forth in Rule 23.02(1), allows class actions in order to avoid prejudice to the parties which might result from multiple suits about the same subject matter. Since separate prosecutions might establish "incompatible standards of conduct" for the defendant or dispositive adjudications which "impair or impede" the plaintiffs' protection of their interests, the unitary adjudication of a class action is preferable. Tenn.R.Civ.P. 23.02(1)(a) & (b).

The second reason for allowing class action adjudication, set forth in Rule 23.02(2) applies to cases in which injunctive or declaratory relief is the predominant relief sought. Thus, a class action may be maintained when the party opposing the class "has acted or refused to act on grounds generally applicable to the class." Tenn.R.Civ.P. 23.02(2). While this provision may also apply in cases seeking monetary relief, that relief must be "secondary or ancillary to the predominant injunctive or declarative relief sought." H. Newberg, *Newberg on Class Actions*, § 4.12, at 294 (2d ed. 1985) (hereafter Newberg, *supra*, § ——, at ——).

The third situation in which class actions may be maintained are those situations in which questions of law and fact predominate over individual issues making a class action the superior method for a fair resolution of the controversy. Tenn.R.Civ.P. 23.02(3). This provision is the most general, arguably encompasses all class actions, and is based on principles of judicial economy. Newberg, *supra*, § 4.24, at 315. Because subsection three requires notice to all class members, and because of its opt out provisions, certification under subsections (1) or (2) is generally preferred. *Id.*, § 4.20, at 310.

Tenn.R.Civ.P. 23.01. The complaint in this case alleges, in paragraphs 19 through 22, these pre-

Plaintiff Meighan alleged that each of the three categories for class action certification applied to this lawsuit. Defendant opposed certification on all grounds. In its order granting certification, the trial court held as follows:

> [I]n an inverse condemnation case, such as this one, venue means jurisdiction and ... this Court therefore has no jurisdiction to certify a class action comprised of landowners whose land lies outside Knox County, Tennessee; and that while this action is appropriate for county-wide certification under Rule 23.02(3), ... the Court will defer deciding. . . .

After considering further pleadings, the court certified the action "as a class action and order[ed] that it shall be so maintained pursuant to Rule 23.02(3). . . ." The court limited the class to affected landowners in Knox County.

Implicit in the court's ruling was a finding that plaintiff had established all of the prerequisites for maintaining a class action under Rule 23.01 as well as a finding that a class action was appropriate under Rule 23.02(3). It is equally apparent that the trial court's redefinition of the class was prompted by the court's interpretation of venue and jurisdiction requirements in eminent domain actions. Both of these rulings were challenged on appeal.

The Court of Appeals reversed the class action certification "because there are no more remaining questions of law or fact common to the class." In that court's opinion, the only remaining issues

> are whether each fee interest owner is entitled to recover damages and, if so, in what amount. These questions are different for each class member and are therefore not common to the class. . . .

> Because resolution of each plaintiff's claim will require a detailed factual inquiry as to the market value of that plaintiff's property ... this case is inappropriate for class action treatment.

requisites.

As the Court of Appeals correctly noted, the determination of whether an action should proceed as a class action is a matter which is left to the sound discretion of the trial judge. Only upon a finding of an abuse of that discretion should the trial judge's decision be modified on appeal. *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir.1988). The Court of Appeals' conclusion, prompted by our decision in *Buhl*, was that the trial court abused its discretion "because there are no remaining questions of law or fact common to the class." We disagree.

The decision in *Buhl* did reconcile one of the ·legal issues in this case which was common to all plaintiffs. It did not, however, resolve all the common legal and factual issues. The removal of one common legal question is not sufficient grounds for decertifying the class if other common questions of law or fact remain. *See generally* 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1778, at 522–46 (2d. ed 1986) (hereafter *Federal Practice and Procedure, supra*, § —— at ——).

It is well established that the existence of separate issues of law and fact, particularly regarding damages, do not negate class action certification. *See* Rules Advisory Committee Notes to 1966 Amendments to Fed.R.Civ.P. 23, 39 F.R.D. 69 (1966).[2] While the separate factual issue of individual damages remains, common legal and factual issues, including the nature of the claim and of the relief, predominate. We hold that the trial court properly exercised its discretion in certifying a class action in this lawsuit and that the appellate court improperly interfered with that discretion by decertifying the class based on the *Buhl* decision.

In addition to being an inappropriate case for finding an abuse of discretion on the part of the trial judge, good reasons support the initial, as well as the continued, certification of this case as a class action. First, it is

properly the trial court's prerogative to make the initial determination of and any subsequent modifications to class certification. The trial court retains significant authority to redefine, modify, or clarify the class.

Furthermore, and perhaps more importantly, we are mindful of the genesis of class actions. Historically, class actions were created as a matter of convenience "to afford partial justice to parties before the court when they were unable to join all interested parties pursuant to the then-compulsory joinder rule governing equity court procedures." *See Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115, 117–18, 85 L.Ed. 22 (1940). The United States Supreme Court has recognized that class actions advance "efficiency and economy of litigation which is a principal purpose of the procedure." *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 159, 102 S.Ct. 2364, 2371, 72 L.Ed.2d 740 (1982). Thus, in 1980, the United States Supreme Court concluded:

> The justifications that led to the development of the class action include the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means of disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims.

*United States Parole Commission v. Geraghty*, 445 U.S. 388, 402–03, 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980). Thus, while the device has its notable advantages to the parties to a lawsuit, it also advances the interests of judicial economy and of providing access to the courts.

These are the most notable of the justifications for class certification in the case before us. The takings by this defendant potentially could result in hundreds of lawsuits in dozens of courts occupying dozens of judges. Inconsistent decisions regarding the trespass and punitive damages claims would be likely. Separate appellate decisions with differing results are no less likely. Determination of

---

**2.** We have previously held that because of the identical language in our Rule 23 and in Rule 23 of the Federal Rules of Civil Procedure that federal authority is persuasive. *Bayberry Associates v. Jones*, 783 S.W.2d 553 (Tenn.1990).

the remaining common issues in a single forum is a far superior method of resolution.

Additionally, the certification serves to provide access to the courts to individual claimants whose small claims would not otherwise justify their seeking relief. "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980). While defendant argues that this merely allows plaintiff's counsel to have a more lucrative case, historically, fee splitting was a primary impetus behind the class action device. It is not only not condemnable, it is commendable.[3]

■ Thus, we conclude that when a trial court properly exercises its discretion and certifies a lawsuit as a class action under Rule 23.02(3), the fact that one of the significant common legal issues is resolved prior to trial does not justify a decertification of the action if the common questions of law or fact that remain predominate. More importantly, if the trial court has properly exercised its discretion in certifying the class initially, modifications to that order remain the trial court's prerogative.

Defendant contends that the sole remaining issue in this case is the amount of individual damages suffered by each property owner. Consequently, defendant suggests that a class action is inappropriate. While we recognize that the issue of compensatory damages may require some individual consideration, we disagree with defendant's position that each owner will be entitled to present detailed damages evidence.

■ In a class action, courts are not required to conduct separate damage inquiries for each class member. Instead, the court may determine an aggregate damage amount for the class as a whole. Newberg,

*supra*, § 4.26, at 321. The trial court may simply choose to divide the award among members or may allow each plaintiff to recover by proving his or her claim against the entire judgment. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). This case is particularly amendable to the aggregate damage approach.

■ It is likewise irrelevant that the case involves property damage. Though often characterized as "unique," this quality does not foreclose cases involving property damages from Rule 23 procedures. Literally dozens of class actions involving property damages have proceeded in our state and federal courts. *See e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982); *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773 (9th Cir.1994) (after federal court consolidation and removal); *Hart v. City of Detroit*, 97 Mich.App. 697, 296 N.W.2d 151 (1980).

### B. Venue in Class Actions

Having reversed the Court of Appeals' decertification of this class action, we must address plaintiff's contention that the trial court's single county limitation was in error. Plaintiff objects to the trial court's redefining of the class to include only those owners of affected property in Knox County. Defendant phrases the issue differently asserting, as the trial court did, that it is a question of subject matter jurisdiction.

Defendants correctly note that the Circuit Court has subject matter jurisdiction in an eminent domain action. Tenn.Code Ann. § 29–16–104 (1980 Repl.). Establishing the proper court for the filing of the action, however, does not necessarily establish the proper or exclusive location. While the applicable statute addresses the issue of venue, *id.*, it does not and could not purport to modify the equally applicable provisions of Rule 23. Were the specific statutory provision regarding venue interpreted as defendant urges, class actions would, by definition,

---

3. We remind defendant "that it is the boast of the common law that the lowest shall have its benefits as well as the highest feel its power...." *Cumberland Telephone & Telegraph Co. v. Shaw*,

102 Tenn. 313, 52 S.W. 163, 164 (1899) (case allowing punitive damage claim when jury award was $7.50).

cease to exist in this and a number of different statutory causes of action.

Subject matter jurisdiction and venue are two separate concepts. Subject matter jurisdiction concerns the authority of a particular court to hear a particular controversy. *Landers v. Jones*, 872 S.W.2d 674 (Tenn.1994). It relates to the nature of the cause of action and the relief sought. *Id.* It is generally defined by the constitution or statute and conferred by the authority that organizes the courts. *Cooper v. Reynolds*, 77 U.S. (10 Wall.) 308, 19 L.Ed. 931 (1870); *Turpin v. Conner Bros. Excavating Co., Inc.*, 761 S.W.2d 296 (Tenn.1988). Here, there is no question that the Circuit Court for Knox County has subject matter jurisdiction over this action. Tenn.Code Ann. § 29–16–104 (1980 Repl.). Further, there is no question that the court has personal jurisdiction over the parties.[4]

Venue, on the other hand, is a concept based on privilege of and convenience to the parties. *Turpin v. Conner Bros. Excavating Co., Inc.*, 761 S.W.2d at 297. It is generally not a condition precedent to the court's power, but relates instead to the appropriateness of the location of the action. While there is much debate regarding the connectedness between the two concepts, our rules of civil procedure have clearly distinguished between the two. Improper venue is a matter which is waived unless contested in the first pleading. Tenn. R.Civ.P. 12.08. Subject matter jurisdiction, on the other hand, cannot be waived, because it is the basis for the court's authority to act. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn.1994).

In a class action venue is controlled by the residence of the named representative. 7A *Federal Practice and Procedure, supra*, § 1757, at 91. The residence of non-represented class members is not dispositive. Since any contrary rule would be unworkable, the residence of non-represented class members may be disregarded rather than allowed to defeat venue. *Id.* If every member of the class were required to reside in the venue where the action was filed, class actions would cease to exist. While the trial court retains discretion to grant or deny certification and to define the class, a class need not be defined so as to include only parties who meet the venue requirements. *Id.*

The trial court's order redefining the class in this case is based on the court's mistaken belief that all class members **must** reside in the same venue. While the court can limit the class based on appropriate factors, the court is not required to limit the class based on residence. Since the trial court's order limiting the class to Knox County property owners was based on a mistake of law, we reverse and remand. On remand, the court should consider the numerous justifications for allowing the maintenance of a class action in this case including judicial economy, financial feasibility, and consistent verdicts, and should not base any future class determinations on venue alone.

### III. Available Causes of Action

Our decision in *Buhl* has established that defendant has taken plaintiff's property, entitling plaintiff to relief. The second issue raised in this case concerns the available causes of action.

Plaintiff's complaint alleges a "taking" of his land and a trespass over his land. Consequently, he contends, he is entitled to damages, including punitive damages, traditionally available in cases involving injury to real property. Defendant challenges plaintiff's right to proceed other than by the statutory method prescribed for inverse condemnation actions.

Our analysis begins with the statute itself. Tennessee Code Annotated section 29–16–123(a) has remained unchanged since it was enacted as Section 1347 of the Code of 1858. It is entitled "Action initiated by owner" and provides:

---

4. Personal jurisdiction, by contrast to subject matter jurisdiction, relates to the ability to bring the parties before the court. *Young v. Kittrell*, 833 S.W.2d 505 (Tenn.App.), *perm. to appeal* *denied*, (Tenn.1992). Unlike subject matter jurisdiction, it may be waived by consent or by failure to object. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn.1994).

If, however, such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or he may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest.

Tenn.Code Ann. § 29–16–123(a) (1980 Repl.). Plaintiff argues that allowing a property owner to sue for damages "in the ordinary way" supports an action for trespass, and consequently, allows an award of punitive damages. Defendant contends that the language refers instead to the method of commencement of an action by a property owner against the taking authority.

While not recent, prior decisions have resolved both of these contentions. In *Duck River Valley Narrow Gauge Railroad Company v. Cochrane*, this Court described the action by the landowner against the railroad company for "land taken and appropriated . . . in constructing its road across his farm" as "an ordinary action of trespass." *Duck River Valley Narrow Gauge Railroad Company v. Cochrane*, 71 Tenn. 478, 479 (Tenn. 1879). The question for the Court was specifically whether the statutory or charter remedies were "exclusive of all other remedies." *Id.*

Relying on Section 1347 of the Code of 1958, identical to the present Section 29–16–123(a), the Court found that trespass was a viable, alternative cause of action.

The latter clause of this section leaves no doubt as to the right of the owner to bring an action in the ordinary way, which can mean nothing else than an action of trespass or an action upon the facts of the case to recover the value of the land and the damages.

*Id.* at 480. Previous inconsistent decisions were based on charter provisions and not on the statute. *Id.*

The Court's decision in *Duck River* has been consistently applied. *See e.g., Southern Railway Company v. Jennings*, 130 Tenn. 450, 171 S.W. 82 (1914); *Hopper v. Davidson County*, 206 Tenn. 393, 333 S.W.2d 917 (1960); *Scott v. Roane County*, 478 S.W.2d 886 (Tenn.1972); *East Tennessee & W.N.C.R. Co. v. Gouge*, 30 Tenn.App. 40, 203 S.W.2d 170, *cert. denied*, (Tenn.1947); *Betty v. Metropolitan Government*, 835 S.W.2d 1 (Tenn.App.), *perm. to appeal denied*, (Tenn. 1992). In our later cases, we have made the existence of two separate remedies abundantly clear. *Scott v. Roane County*, 478 S.W.2d at 887 ("The statute . . . should be read as allowing two distinct actions. The first being an inverse or reverse condemnation action and the second being a suit for damages in the ordinary way."); *Johnson v. Roane County*, 212 Tenn. 433, 370 S.W.2d 496, 498 (1963) ("The statute provides an aggrieved land owner with two or alternative rights or remedies. . . .").

In our two most recent pronouncements we have faced the argument raised by defendant—that the language refers only to the manner of commencement rather than to the nature of the cause of action. In both cases, we found no merit to the argument. *Johnson v. Roane County*, 370 S.W.2d at 498; *Scott v. Roane County*, 478 S.W.2d at 887–88.

While it is true that, under the statute, owner-initiated inverse condemnation actions required commencement by petition followed by notice or publication, it does not follow that "sue in the ordinary way" means only, as defendant argues, that suit may also be commenced by summons. Confronted with that issue, we have clarified that a property owner who seeks the first remedy under the statute, that being a true inverse condemnation proceeding, may not institute the action by summons, but must utilize the procedure outlined for taker-initiated actions. *Scott v. Roane County*, 478 S.W.2d at 887. Commencement by summons, however, is appropriate for suits seeking the second remedy, damages in the ordinary way. *Id.* at 887–88.

■■■ We uphold the long-standing law of this jurisdiction that a property owner whose property is taken by an authority exercising the power of eminent domain has two alternative causes of action. The property owner may petition for a jury of inquest as provided

by statute. Tenn.Code Ann. § 29–16–123(a) (1980 Repl.). This alternative, properly designated as an inverse condemnation action, must be instituted in accordance with the statutory provisions applicable to condemnation actions initiated by the taking authority.[5] *Johnson v. Roane County,* 370 S.W.2d at 498. Alternatively, the property owner may sue for damages in a trespass action. If the owner proceeds on a trespass cause of action, the proceeding is by jury "in the usual way." Tenn.Code Ann. § 29–16–123(a) (1980 Repl.) ("in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest"); *id.* at –118(a) ("[e]ither party may also appeal from the finding of the jury, and, ... have a trial anew, before a jury in the usual way"). Having so concluded, we reverse the Court of Appeals and the trial court's actions dismissing the trespass claim.

### IV. Damages in Trespass Cause of Action

 Our final inquiry in this case, having affirmed the existence of the trespass cause of action, is the appropriate measure of damages. Initially, we note that "the rules for determining damages [in trespass actions] are based upon the purposes for which such actions are maintainable [including t]o give compensation ..., [and t]o punish wrongdoers and deter wrongful conduct...." 75 Am.Jur.2d Trespass § 118, at 89 (1991). While both parties acknowledge plaintiff's right to recover compensatory damages for the taking of plaintiff's property, defendant disputes any right to recover punitive damages.

 In trespass actions generally, an award of punitive damages is discretionary with the trier of fact. *Id.* § 148, at 111. Punitive damages may be awarded for a trespass which is wanton, oppressive, or accompanied with outrage or other aggravating circumstances. *Id.,* § 150, at 112–13. Their purpose is to punish for outrageous conduct and to deter similar future conduct. *Id.,* § 148, at 111.

Our older cases have applied these rules of law in trespass actions involving property takings by authorized authorities. In three cases involving the wrongful cutting of trees by authorities, some with permission, some expressly without, we allowed the consideration of punitive damages. *Cumberland Telephone & Telegraph Co. v. Shaw,* 102 Tenn. 313, 52 S.W. 163, 164 (1899); *Cumberland Telephone & Telegraph Co. v. Poston,* 94 Tenn. 696, 30 S.W. 1040, 1041 (1895); *Memphis Bell Telephone Company v. Hunt,* 84 Tenn. 456, 1 S.W. 159, 160 (1886). In *Poston* and *Shaw,* we reiterated the general rule that the jury could, in its discretion, award punitive damages upon a finding that the trespass—in these cases, the cutting of trees—was done fraudulently, wantonly, oppressively, or with gross negligence. *Cumberland Telephone & Telegraph Co. v. Poston,* 30 S.W. at 1041; *Cumberland Telephone & Telegraph Co. v. Shaw,* 52 S.W. at 164.

We recently revisited the issue of punitive damages in trespass actions in *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 900 (Tenn.1992). There, we relied on three nineteenth century cases.

> In an action of trespass the jury [is] not restrained, in their assessment of damages, to the amount of the mere pecuniary loss sustained by the plaintiff, but may award damages in respect of the malicious conduct of the defendant, and the degree of insult with which the trespass has been attended.... [T]hese damages should operate to punish the defendant and deter others ... [and] were legally appropriate in cases of fraud, malice, gross negligence, or oppression.

*Hodges v. S.C. Toof & Co.,* 833 S.W.2d at 900 (quoting *Wilkins v. Gilmore,* 21 Tenn. 140, 141 (1840); *Polk, Wilson & Co. v. Fancher,* 38 Tenn. 336, 341 (1858); *& Byram v. McGuire,* 40 Tenn. 530, 532 (1859)).

 Defendant argues that later authority has abandoned the proposition set forth in these earlier cases. It cites *Shelby County v. Barden,* 527 S.W.2d 124, 127 (Tenn.1975) and

---

5. These procedures are outlined in Tennessee Code Annotated Sections 29–14–104 (petition); –105 (notice of petition); and –107 (writ of inquiry of damages).

*Betty v. Metropolitan Government*, 835 S.W.2d 1, 7 (Tenn.Ct.App.), *perm. to appeal denied*, (Tenn.1992). Neither of these cases, however, involved an owner-initiated trespass cause of action. *Barden* was an inverse condemnation action which involved the division of damages between a lessor and lessee of taken property. *Shelby County v. Barden*, 527 S.W.2d at 126. Our statement that the "measure of damages to the landowner [in an inverse condemnation action] is that used in condemnation cases," does not foreclose the availability of punitive damages in the rare, appropriate trespass case for two reasons. First, the case did not involve the issue. It was an inverse condemnation action, not a trespass action.[6] Second, we are not authorized by judicial decision to take away a right conferred by statute. Concomitant with the legislative right to sue for trespass is the corresponding remedy which may in unusual, unique cases include punitive damages.

Equally inapposite to defendant's position is the *Betty* case. That case was also an inverse condemnation proceeding, coupled with claims under the Governmental Tort Liability Act. Its thorough instructions regarding damages did not purport to resolve the issue we face, though it did acknowledge, in dicta, that "in actions for 'damages in the ordinary way' ... a property owner's measure of damages is the same as in any other case involving injury to real property." *Betty v. Metropolitan Government*, 835 S.W.2d at 7.

■■■ That dicta is the holding of this case. A property owner who sues for damages in a trespass action against a taking authority may, in an appropriate case, recover punitive damages. Those appropriate cases will be few. Punitive damages are only available in egregious circumstances in which the trespass is accomplished fraudulently, wantonly, oppressively, or with gross negligence. Furthermore, punitive damages are not available against many taking authorities. But in those rare cases in which the requisite elements can be established, punitive dam-

ages may be awarded, in the factfinder's discretion.

■■■ Our explicit recognition that punitive damages are available in appropriate cases based on common-law trespass rather than statutory inverse condemnation grounds is required by legal and practical considerations. The creation of the statutory inverse condemnation cause of action does not impair the common law right of action unless expressly stated. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d at 899. Here, the right is expressly reserved, as must be the corresponding remedy.

Moreover, we believe that the availability of punitive damages in appropriate condemnation cases is necessary to compensate fully aggrieved landowners in accordance with the constitution. Our statute provides explicit procedures which entities with the power of eminent domain should follow. *See* Tenn. Code Ann. §§ 29–16–105——122 (1980 Repl.). Those entities which proceed in compliance with those procedures are afforded protections, including the ability to avoid punitive damages claims. Those who fail to avail themselves, should under appropriate circumstances, be liable to the landowner for the full measure of damages appropriate to the cause of action. Accordingly, we reverse the prior order dismissing the request for punitive damages. On remand, the issue will be determined in accordance with the principles set forth in this opinion and in *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn.1992).

## V. Conclusion

We reverse the dismissal of class certification as well as the dismissal of the trespass cause of action and punitive damages claim. We remand to the trial court for further proceedings consistent with this opinion. The costs of appeal are taxed to defendant.

ANDERSON, C.J., and DROWOTA, REID and BIRCH, JJ., concur.

*Shelby County v. Barden*, 527 S.W.2d at 127–28.

6. Notably, all of the cases cited were also either condemnation or inverse condemnation actions.

## ORDER DENYING REHEARING
PER CURIAM.

In this case, Sprint has requested a rehearing. It argues that the Court has overruled prior authority without acknowledgment. We respectfully disagree. As our opinion carefully pointed out, longstanding precedent supports the proposition that two causes of action are available under the inverse condemnation statute. Likewise, the decisions of this Court acknowledge the availability of punitive damages in trespass cases in the jury's discretion.

Sprint also challenges the decision on the basis that landowners are limited to relief authorized by statute. It cites four cases,[1] none of which have any application to this case. In *Fritts v. Leech*, 201 Tenn. 18, 296 S.W.2d 834 (1956), a landowner brought suit against the state highway department. The sovereign immunity doctrine prohibited the landowner from seeking redress not specifically allowed by statute. *See* Tenn. Const. art. I, § 17. Likewise, in *Zirkle v. City of Kingston*, 217 Tenn. 210, 396 S.W.2d 356 (1965) and *Monday v. Knox County*, 220 Tenn. 313, 417 S.W.2d 536 (1967), property owners were limited in suits against governmental entities to that authorized by statute in derogation of constitutional sovereign immunity. Each of these cases stands for the elementary proposition that landowners with adequate legal remedies cannot seek extraordinary equitable ones. The principle which Sprint contends is deduced from these cases is incorrect.[2]

Finally, Sprint attacks two so-called factual findings in the opinion. Sprint's concern that the Court has "found facts" against it is unfounded. The Court resolved only the propriety of the lower court's decisions on motions to dismiss. It did not determine issues of fact, nor direct that trial court's

subsequent actions except as to the availability of a class action and, in an appropriate case, of punitive damages.

For all these reasons, the petition for rehearing is denied.

---

1. The fourth case relied upon, *Pleasant View Utility District v. Vradenburg*, 545 S.W.2d 733 (Tenn. 1977), is totally inapposite as it deals with the statute of limitations and proper forum for a statutory condemnation action.

2. Equally unsupported is Sprint's claim that the Court overruled *Doty v. American Telephone and Telegraph Co.*, 123 Tenn. 329, 130 S.W. 1053 (1910). Again, petitioner incorrectly states the holding of the case which was, in fact, a dismiss-al of an ejectment action on statute of limitations grounds. The court's holding concerned the telephone companies' rights to take for internal improvements under eminent domain proceedings. In dismissing the ejectment proceeding which was time barred, the court commented in dicta that the landowner was limited to a statutory remedy. Other cases cited and discussed in the opinion have clarified that over-simplification.