IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 29, 2005 Session

## CHARLES H. WEEKS, ET AL. v. RAY SCOTT, ET AL.

**Direct Appeal from the Chancery Court for McNairy County**
**No. 7688     Dewey C. Whitenton, Chancellor**

No. W2005-00584-COA-R3-CV - March 3, 2006

The chancery court awarded Plaintiffs Weeks damages for the taking of trees by the City of Eastview. Eastview appeals, and we vacate the award of damages against Eastview for lack of subject matter jurisdiction. On cross-appeal, Weeks assert the trial court erred in failing to assess damages against Defendant Ingram and in determining Weeks had impliedly dedicated a roadway known as Autumn Lane as a public roadway. We modify and affirm on these issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in part;**
**Affirmed as Modified in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Michael L. Mansfield, Rainey, Kizer, Reviere & Bell, Jackson, Tennessee, for the appellant, City of Eastview.

R. Porter Feild, Burch, Porter & Johnson, Memphis, Tennessee, for the appellees, Charles H. Weeks and Linda O. Weeks.

Stephen Craig Kennedy, Deusner & Kennedy, Selmer, Tennessee, for the appellee, Dudley R. Ingram.

### OPINION

This appeal arises from an action resulting from the taking of trees belonging to Plaintiffs Charles H. Weeks and Linda O. Weeks (collectively, "Weeks") by the City of Eastview. In August 2001, Weeks filed a petition for a temporary restraining order, preliminary injunction and permanent injunction to prohibit trespass and for a declaratory judgment of property rights against Ray Scott (Mr. Scott) and Dudley Ingram (Mr. Ingram). In their petition, Weeks claimed they owned three tracts of land adjacent to a long-existing roadway known as Autumn Lane; that Autumn Lane was a private roadway; and that Mr. Ingram, a contractor acting on behalf of the City of Eastview,

trespassed on their property in April 2001 and damaged it by removing trees in order to widen the road to service a subdivision planned by their neighbor, Mr. Scott. They further asserted Mr. Scott planned to use Autumn Lane as a means of ingress/egress, and that Eastview had wrongly authorized Mr. Ingram to enter the property.

In September 2001, Weeks and Mr. Ingram entered into a consent order prohibiting Mr. Ingram from entering the property until a final determination of the matter. Mr. Ingram answered Weeks' complaint in March 2002, denying Weeks were entitled to relief. Mr. Ingram asserted Autumn Lane was a public road and that Eastview had contracted with him to widen Autumn Lane. Mr. Scott conveyed his property to Plaintiffs in April 2003, rendering the action against him moot.

In November 2002, the City of Eastview was added as a party by consent order allowing Weeks to amend their petition. In their amended petition, Weeks asserted Mr. Ingram was a contractor acting under contract with Eastview in connection with the widening of Autumn Lane. Weeks sought a permanent injunction and a declaration that Eastview had no rights in Autumn Lane. In the alternative, Weeks sought damages from Eastview arising from the taking of land beneath Autumn Lane.

Following a hearing of the matter in October and November 2004, the trial court entered a final order in the matter in January 2005. The trial court determined that Autumn Lane is a public road by virtue of implied dedication; that Weeks owned the disputed property adjacent to Autumn Lane; and that Weeks were entitled to damages from Eastview for the cutting of fifty trees valued at $200 each and for forty trees valued at $100 each, with interest of 8% accruing from July 2001 to November 12, 2004, for a total judgment of $14,000, plus interest. The trial court dismissed Weeks action against Mr. Ingram, individually. Eastview filed a timely notice of appeal to this Court, submitting, *inter alia*, the trial court lacked subject matter jurisdiction over this action. Weeks cross-appeal, asserting the trial court erred in dismissing the cause of action against Mr. Ingram, individually, and in determining Autumn Lane was a public road by implied dedication.

We agree that the trial court acted without subject matter jurisdiction over the inverse condemnation action, and accordingly vacate its order assessing damages against Eastview. The remainder of the trial court's judgment is affirmed.

*Analysis*

Subject matter jurisdiction "relates to the right of the court to adjudicate, or to make an award through the remedies provided by law upon facts proved or admitted in favor of, or against, persons who are brought before the court under sanction of law." 17 Tennessee Jurisprudence *Jurisdiction* § 2 (1994). It concerns the authority of a court to hear a controversy. *Meighan v. U.S. Sprint Commc'ns,* 924 S.W.2d 632, 639 (Tenn.1996). Subject matter jurisdiction relates to the nature of the claim and the relief sought, and is generally defined by statute or the constitution. *Id.* If a court acts without subject matter jurisdiction, its orders are void. *Riden v. Snider*, 832 S.W.2d 341, 343

(Tenn.Ct. App.1991). Such orders are a nullity and may be collaterally attacked. *County of Shelby v. City of Memphis*, 211 Tenn. 410, 365 S.W.2d 291, 292 (Tenn.1963).

In their briefs to this Court, the parties dispute whether this action is one for inverse condemnation under Tennessee Code Annotated § 29-16-123, or sounds in tort and must be brought under the Governmental Tort Liability Act. In either case, subject matter jurisdiction is vested in the circuit court. Tenn. Code Ann. § 29-16-104; Tenn. Code Ann. § 29-20-305. Additionally, a property owner has two alternative claims against a governmental authority exercising its right of eminent domain. *Meighan*, 924 S.W.2d at 640. It may commence an inverse condemnation action and recover in accordance with the eminent domain statutes, or it may sue for damages in an action for trespass. *Id.* at 640-41. Subject matter jurisdiction over both causes of action is vested in the circuit court. *Id.* at 639; Tenn. Code Ann. § 29-16-104.

Weeks, however, additionally asserts the chancery court properly retained jurisdiction over its amended complaint seeking damages for a taking under Tennessee Code Annotated § 29-16-123 where the chancery court had jurisdiction over the original action for injunctive relief and a declaration of rights. Weeks cite *Chambers v. Chattanooga Union Railroad Co.*, 171 SW. 84 (Tenn. 1914), *Evans v. Wheeler*, 348 S.W.2d 500 (Tenn. 1961), *McCain v. State*, 442 S.W.2d 637 (Tenn. Ct. App. 1968) and *Knox County v. Moncier*, 455 S.W.2d 153 (Tenn. 1970), for the proposition that because the matter was, in part, a property dispute and an action for injunctive relief, jurisdiction in the chancery court was proper.

The chancery court may retain jurisdiction for the purpose of assessing damages where an original action for equitable relief has "turned into" a proceeding for eminent domain. *Evans v. Wheeler*, 348 S.W.2d at 502. Unlike the cases cited by Weeks, the case now before us was not an action against Eastview for equitable relief that turned into an eminent domain proceeding. *Moncier*, moreover, was an action for inverse condemnation which was brought in circuit court. Additionally, the issue presented in *Moncier* was not one of subject matter jurisdiction, but of the statute of limitations. *Moncier*, 455 S.W.2d 155-56.

First, although the present action began as one for injunctive relief and a declaration of property rights, the relief sought was not against Eastview but against Mr. Ingram, individually, and Mr. Scott. Second, the question of ownership of the property adjacent to Autumn Lane on which the trees were damaged was not a matter involving Eastview. Rather, the question of property ownership was a matter between Weeks and Mr. Scott, and was rendered moot by the conveyance by Mr. Scott to Weeks of his parcel. Third, the question of whether Autumn Lane, a pre-established roadway, is a public or private road is not relevant to the question of whether Eastview took property adjacent to Autumn Lane.

In this case, in their amended complaint, Weeks' action against Eastview was for a declaration of rights in Autumn Lane and in the alternative, for damages for the taking of the land beneath Autumn Lane and diminution of value to the remainder of property. The declaration of rights in Autumn Lane itself, however, a roadway which had existed for many years prior to 2001,

is distinct from the damages for the taking of trees on land adjacent to Autumn Lane in 2001. The issue of ownership of land adjacent to Autumn Lane was a matter wholly between Weeks and Mr. Scott.

Weeks' claim against Eastview, insofar as it related to the property adjacent to Autumn Lane, was for damages arising from inverse condemnation or trespass. It was distinct from the original action seeking to enjoin Mr. Ingram, individually, from further entry pending a resolution of the property ownership action against Mr. Scott. Weeks' claim against Eastview was for damages; it was not one for equitable relief that turned into an action for inverse condemnation under *Evans*. Under the facts of this case, the relationship between the motion for injunctive relief against Mr. Ingram, individually, which preserved the *status quo* pending resolution of the issue of property ownership between Weeks and Mr. Scott, is too attenuated to consider Weeks' claim against Eastview to have arisen from a claim for equitable relief. Although Weeks could have maintained an action against Eastview for damages arising from trespass or inverse condemnation, subject matter jurisdiction over either action is properly within the circuit court.

We next turn to Weeks' assertion on cross-appeal that the trial court erred in failing to assess damages against Mr. Ingram, individually. Certainly, the trial court had jurisdiction over Weeks cause of action for trespass against Mr. Ingram, individually. In their brief to this Court, however, Weeks assert that Eastview hired Mr. Ingram to remove the trees along Autumn Lane in order to widen the roadway. They further assert damages as a result of the taking by Eastview. Weeks' argument, as we perceive it, is that Mr. Ingram is individually liable for a taking by Eastview, a governmental entity exercising eminent domain authority. We find this argument to be somewhat disingenuous and affirm dismissal of Mr. Ingram by the trial court.

We turn finally to Weeks' issue on cross-appeal that the trial court erred in determining Weeks had impliedly dedicated Autumn Lane for use as a public road. Private land can be dedicated by implication for use as a public road. *Johnson City v. Wolfe*, 52 S.W. 991, 992 (Tenn. 1899); *Rogers v. Sain*, 679 S.W.2d 450, 452 (Tenn. Ct. App. 1984). In order to determine that an implied dedication has occurred, the court must find unequivocal proof that the land owner intended such dedication. *Rogers*, 679 S.W.2d at 453. However, intent may be inferred from the facts and circumstances and the acts of the landowner. *Id.* Tennessee courts have long opined that "[t]he public, as well as individuals[,] have a right to rely on the conduct of the owner as indicative of his intent." *Johnson City v. Wolfe*, 52 S.W. 991, 992 (Tenn. 1899). Implied dedication may be inferred "[i]f the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate[.]" *Id.* Factors indicating an intent to dedicate a roadway to public use include, but are not limited to, the opening of a roadway by the landowner to public travel; acquiescence in public use of the roadway as a road; extended public use of the roadway; and maintenance and repair of the roadway by the public. *Rogers*, 679 S.W.2d at 453 (citations omitted).

In the present case, it is not disputed that the roadway known as Autumn Lane, once a farm roadway, was paved at the expense of Eastview and/or McNairy County. Additionally, although the property along the roadway once belonged to the Weeks family, portions of the original property

subsequently have been acquired by third parties who utilize the roadway for access to their improved property from the main highway. Further, the city water line and electric service run along the roadway, as do mail and school bus services. Additionally, Weeks' Autumn Lane address is utilized for 911 emergency service. We cannot say the evidence preponderates against the trial court's determination that Autumn Lane has been impliedly dedicated as a public roadway.

However, the trial court's order states that Eastview "owns the land underlying the ten foot strip of pavement now known as Autumn Lane, having acquired such land through a dedication by implication[.]" Where property is impliedly dedicated as public property, the public acquires only an easement in the dedicated property. *Town of Benton v. People's Bank of Polk County*, 904 S.W.2d 598, 603 (Tenn. Ct. App. 1995)(citing *City of Memphis v. Overton*, 392 S.W.2d 98, 100 (Tenn 1965)). Although the property owner cannot obstruct the public use of the dedicated property, the underlying fee in the property remains in the owner. *Id.* Accordingly, we modify the order of the trial court insofar as it awards ownership of the land beneath Autumn Lane to Eastview.

### *Holding*

We vacate the order of the trial court awarding Weeks damages for a taking by the City of Eastview for lack of subject matter jurisdiction. We affirm dismissal of Weeks' action against Mr. Ingram, individually. We affirm the trial court's determination that Autumn Lane has been impliedly dedicated as a public roadway. However, we modify the trial court's order insofar as it vests ownership of the land beneath Autumn Lane in Eastview. Remaining issues raised in the parties' briefs are pretermitted in light of the disposition of this matter. This cause is remanded to the trial court for entry of judgment consistent with this opinion. Costs of this appeal are taxed to the Appellees, Charles H. Weeks and Linda O. Weeks.

_____
DAVID R. FARMER, JUDGE