IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 4, 2025

**RONALD L. SHOEMAKE v. ANN L. SHOEMAKE**

**Appeal from the Chancery Court for Sumner County**
**No. 2012-DM-436          Joe H. Thompson, Judge[1]**

_____

**No. M2024-01665-COA-R3-CV**

_____

In this post-divorce action, the wife, Ann L. Shoemake ("Wife"), filed a petition against the husband, Ronald L. Shoemake ("Husband"), in the Sumner County Chancery Court ("trial court") to receive her marital share of Husband's pension payments through the Tennessee Consolidated Retirement System ("TCRS"). Wife had been awarded a portion of Husband's TCRS payments in the final decree of divorce ("Final Decree"). Husband filed a counter-petition seeking, *inter alia*, a reduction of his alimony *in futuro* obligation. After the trial court entered a judgment in favor of Wife for her portion of his TCRS payments, Husband unilaterally ceased paying his alimony *in futuro* obligation to Wife and failed to pay the court-ordered TCRS arrearages. This caused Wife to file two motions for contempt against Husband, one in February 2024 and the other in August 2024. In the February 2024 motion, Wife requested that the trial court find Husband in "willful contempt" until he purged himself of the TCRS shortage and alimony arrearage. On March 4, 2024, the trial court ordered Husband to pay the TCRS shortage and ruled that Husband should continue to pay the $600.00 monthly alimony but declined to rule on the motion for contempt, stating that the court "reserves the issue of granting a judgment pending the approval of the QDRO to be submitted." Despite the trial court's ruling, Husband did not resume his alimony payments and did not comply fully with the order concerning his TCRS obligation, and Wife accordingly filed a second motion for contempt in August 2024. In that motion, Wife requested that the trial court find Husband "in civil contempt for his failure to make payments for [Wife's] share of TCRS up to August 14, 2024, alimony payments to date of $600.00 per month, and judgment be granted accordingly." The trial court entered an order on October 9, 2024, granting to Wife a judgment of "$4,812.75 to be paid within 30 days" for Husband's TCRS obligation and arrearage, but the trial court did not specifically address Wife's two motions for contempt or her request for alimony arrearage. On October 11, 2024, the trial court entered a second order, denying Husband's request for a reduction of alimony and granting to Wife her attorney's fees as the prevailing

---

[1] Chancellor Louis W. Oliver, III, recused himself from the case by order entered on June 23, 2023, and Judge Joe H. Thompson, as presiding judge *pro tem* of the 18th Judicial District, appeared thereafter by interchange.

party pursuant to Tennessee Code Annotated § 36-5-103(c). Again, the trial court did not address Wife's motions for contempt or her request for alimony arrearage. Husband has appealed. Because the trial court did not fully rule on Wife's outstanding motions for contempt and did not render a decision regarding Wife's request for an alimony arrearage in the amount of $3,000.00, there is no final judgment entered by the trial court, and this Court lacks subject matter jurisdiction to consider this appeal. Accordingly, we dismiss this appeal and remand the case to the trial court for further action.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Grayson Smith Cannon, Nashville, Tennessee, for the appellant, Ronald L. Shoemake.

Russell E. Edwards and Michael W. Edwards, Hendersonville, Tennessee, for the appellee, Ann L. Shoemake.

**MEMORANDUM OPINION**[2]

1. Factual and Procedural Background

The underlying facts and procedural history of this case are undisputed. Husband and Wife married on May 19, 1986, and were divorced by Final Decree on October 28, 2013. Because Husband and Wife had both been employed by the State of Tennessee during their marriage, the Final Decree provided for an equitable division of the parties' respective TCRS pension payments using the deferred distribution method for calculating division of future retirement benefits. The Final Decree additionally awarded alimony *in futuro* to Wife in the amount of $1,200.00, to be paid by Husband monthly until his retirement, at which point the monthly payment would be reduced to $600.00. For several years following their divorce, the parties proceeded without court intervention.

On April 3, 2018, Husband retired at the age of sixty-five and began collecting his monthly retirement payments from TCRS. Sometime before his retirement, Husband invited Wife to his home to inform her that he would be retiring and that she would begin

---

[2] Tennessee Court of Appeals Rule 10 provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

receiving her portion of his TCRS benefits, which Husband stated would be $839.00 per month. According to Wife, Husband had announced this monthly amount verbally and shown Wife a "piece of paper with the numbers on it." Wife averred that she had observed the number "$839" written on the paper but that Husband had not allowed Wife to "hold" the paper "for very long" or to take a picture of it.[3] Wife further averred that she "didn't see who or where [the paper] came from[.]"

The parties did not sign any documents or otherwise execute any written contract during their meeting in 2018, and they did not seek court intervention concerning equitable division of Husband's TCRS retirement account. Because Wife was still working at that time, her TCRS retirement payments, and Husband's marital share of those payments, remained yet unknown. Spanning the next four and one-half years, the parties proceeded in accordance with Husband's verbal pronouncement regarding his TCRS payments, and Husband paid directly to Wife a monthly amount of $1,440.00, reflecting the $840.00 per month he had informed Wife was her allotment from his TCRS retirement plus $600.00 per month in reduced, post-retirement alimony *in futuro* payments per the Final Decree.

On December 5, 2022, Wife sent a letter to Husband, stating that upon her lawyer's advice, she was giving Husband "a chance to make a wrong to a right." Wife explained: "I need you to fix my part of the retirement [$]839.00 to be sent to me by TCRS to my account the way it was suppose[d] to be done when you retired." Wife also gave Husband an ultimatum to comply within two weeks. In response to the letter, Husband sent to Wife a partially completed Qualified Domestic Relations Order ("QDRO"). Husband had filled in a portion of the QDRO to reflect the parties' marriage and divorce dates and the monthly retirement from TCRS that Husband had determined he owed to Wife in the amount of $840.00. Wife did not sign the QDRO.

On January 4, 2023, Wife filed a petition in the trial court seeking (1) a determination of "what share and interest [Wife] should be awarded from [Husband's] pension with TCRS from the date of his retirement forward" and (2) an order directing that a QDRO be prepared and filed with TCRS to separate Wife's retirement obligation from Husband's. In the petition, Wife averred that in May 2018, Husband had "unilaterally reduced [Wife's] alimony to $600.00 and gave her $840.00 in addition to the $600.00." Wife further averred that when Husband announced these changes to Wife, he stated: "I have retired and that's all you're going to get." Wife asserted that she had "trusted" Husband and therefore did not question the amount of retirement and alimony Husband planned to pay to her. Additionally, Wife claimed that she had been "grossly underpaid" by Husband since his retirement in 2018 and that Husband's actions had violated the terms of the Final Decree. In support, Wife referenced the portion of the Final Decree concerning distribution of TCRS retirement funds.

---

[3] The parties agree that Husband rounded the number to $840.00 per month and paid that amount directly to Wife in monthly installments.

After Wife filed her petition in 2023, Husband filed an answer and counter-petition acknowledging that the Final Decree "contain[ed] a calculation by the [trial court] and an express Order that the Wife's interest in the Husband's TCRS Pension shall be 328.39 months." However, Husband propounded that in 2018 he had "conferred" with Wife and that they had "jointly agreed that $840.00 would fairly represent [Wife's] interest in [Husband's] pension less [Husband's] interest in [Wife's] pension as she had not yet begun to receive her retirement benefits." Husband denied any allegations that he had violated the Final Decree, stating that "he believed that he and the Wife had reached an agreement about the amount to be paid to her." Concerning his alimony obligation, Husband admitted that he had reduced the monthly support payments to $600.00 but denied that he had done so "unilaterally" because the Final Decree had provided for such reduction upon Husband's retirement.

In his counter-petition, Husband proffered the affirmative defense that Wife had "acquiesced" to Husband's payment of $840.00 per month "by accepting it for more than four (4) years prior to filing her Petition." Additionally, Husband noted that Wife had not yet retired and therefore had not begun receiving her TCRS retirement payments and that the formula set forth in the Final Decree for calculating retirement had not considered "the disparity in the parties['] ages nor the fact that the Wife would apparently decline to retire" when she was first able to do so. Husband argued that he should receive a reduction in his TCRS obligation to Wife because the Final Decree had not anticipated a scenario wherein Wife was able to receive her portion of Husband's TCRS benefits for a considerable time without Husband's receiving his share of Wife's TCRS benefits.

Accordingly, Husband asked the trial court to calculate Husband's share of Wife's future estimated TCRS benefits and to reduce Husband's TCRS payments to Wife by that amount. In addition, Husband requested that the trial court "modify or eliminate" Husband's alimony obligation to Wife after calculating the parties' respective incomes and determining their entitlement to each other's TCRS benefits. Wife filed an answer to Husband's counter-petition, presenting as an affirmative defense that Husband had "refused to share" with Wife "any information about what he was drawing [from TCRS] when he retired" and that Husband had informed Wife, "this is all I am paying you."

By order entered on November 20, 2023, the trial court instructed Husband to file an amended answer and counter-petition adding certain affirmative defenses that Husband had raised during oral argument. Husband did so on November 24, 2023, including the affirmative defenses of "accord and satisfaction" and acquiescence. Wife filed an answer to Husband's amended counter-petition, responding that the "intent of the [trial court] was to equitably divide" the parties' retirement accounts and that when "each party retired, both parties would share in the payments of the retiree." Wife posited that Husband was therefore not entitled to receive an "offset" of his TCRS obligation to Wife before Wife began receiving her TCRS retirement payments. Wife denied Husband's allegation that

- 4 -

Wife's income was equal to or greater than Husband's and urged that Husband's alimony payments should not be reduced beyond the already proscribed reduction to $600.00 per month as set forth in the Final Decree. Wife reiterated the affirmative defense that she had been "operating under a mistaken belief that she was receiving the correct amount [from Husband's TCRS payments]" because she "trusted" him.

The trial court conducted a hearing on the countervailing petitions on December 12, 2023, during which it heard testimony from Husband and Wife and reviewed documents pertaining to the parties' respective incomes, including tax statements and TCRS records. The trial court entered an order on January 8, 2024, determining, *inter alia*, that (1) Husband's 2018 calculation of his TCRS retirement obligation to Wife of $840.00 had been incorrect; (2) a QDRO should be used to determine Husband's monthly TCRS obligation going forward; and (3) Husband was not in contempt for failing to pay the correct amount of TCRS retirement to Wife because "the parties tried to determine the amounts due on their own[.]"

Concerning Husband's affirmative defenses, the trial court stated that it did "not find an accord and satisfaction in an agreement by Ms. Shoemake to accept the monthly amount of $840" because there had been "no proof that Ms. Shoemake received anything in exchange for the reduction in the payment[.]" Additionally, the trial court determined that there had been "no meeting of the minds" in that Wife "did not know . . . that she should have investigated [Husband's] proposal further."

The trial court then employed the deferred distribution method that had been delineated in the Final Decree to calculate Wife's share of Husband's TCRS benefits. Pending entry of a QDRO, the trial court determined that Husband should pay directly to Wife $1,643.20 per month for her marital share of his TCRS benefits. The trial court additionally entered a judgment against Husband for TCRS arrearage in the amount of $47,603.11. The court directed that Husband should pay this arrearage in monthly installments of $305.15 for 156 months. The court took under advisement Husband's request for a reduction in alimony pending submission of updated income and expense statements from both parties.

On February 6, 2024, Wife filed two motions: a motion for contempt and a motion seeking attorney's fees. In the motion for contempt, Wife alleged that (1) Husband had failed to pay the monthly TCRS obligation of $1,643.20 in December 2023 and January 2024, instead paying $850.00 in December 2023 and $1,707.75 in January 2024, leaving a total shortage of $738.65; (2) Husband had failed to pay $305.15 per month toward his owed arrearage in December 2023 and January 2024; and (3) Husband had failed to pay alimony in the amount of $600.00 in January 2024. Wife claimed that Husband therefore owed her an arrearage of $1,948.95. Wife requested "a judgment in the amount of $1,948.95 and that [Husband] be held in willful contempt until he purges himself of said contempt." In the motion for attorney's fees, Wife alleged that she was entitled to

attorney's fees because she was the "prevailing party" pursuant to Tennessee Code Annotated § 36-5-103(c). Wife included an affidavit executed by her counsel and sought attorney's fees in the amount of $12,254.24. Husband objected to both motions.

On March 4, 2024, following a hearing, the trial court entered an order directing Husband to continue paying the $600.00 monthly alimony payments until the court rendered a decision concerning Husband's motion to reduce his alimony obligation:

> The issue of contempt is taken under advisement until the QDROs are approved. At such time, the parties will submit to the Court an updated expense statement. Until the Court rules on the modification, Mr. Shoemake will pay the $600.00 for January and $600.00 per month thereafter to the trust account of [Wife's attorney].

The trial court also determined that Husband owed Wife a shortage of $738.65 in TCRS benefit payments for the months of December 2023 and January 2024 and reiterated that Husband owed to Wife an additional arrearage of $47,603.11, payable in monthly installments of $305.15 that were to have begun in December 2023. The trial court took the matter of Wife's request for attorney's fees under advisement.

On April 25, 2024, the parties executed a QDRO and entered it in the trial court. The QDRO directed that TCRS pay to Wife $1,948.35 ($1,643.20 plus the $305.15 arrearage payment) per month from Husband's monthly TCRS retirement benefit. Wife began to receive this monthly amount directly from TCRS on August 14, 2024. However, Husband did not resume the $600.00 monthly alimony payments as ordered by the trial court.

On August 22, 2024, Wife filed a second motion for contempt against Husband, stating:

> Again, [Husband] still to this day refuses to pay the $600.00 per month to [Wife's attorney's] trust account. As of this filing, [Husband] is in willful contempt of this Court's Order as follows:
>
> a.    Alimony $600.00 per month x 8 months = $4,800.00 as of August 31, 2024, less $1,800.00 held in Trust by [Wife's attorney], total due: $3,000.00.
>
> b.    [Wife's] share of TCRS up to August 14, 2024: $305.15 x 8 months = $2,441.20.

Wife sought a lump sum of $5,441.20 and requested that the trial court find Husband "in civil contempt for his failure to make payments for [Wife's] share of TCRS up to August

14, 2024, alimony payments to date of $600.00 per month, and judgment be granted accordingly."

The trial court entered two separate orders in October 2024. In the first order, entered on October 9, 2024, the court determined that Husband had failed to make his July 2024 TCRS payment of $1,948.35 directly to Wife and that Husband was further obligated to pay $2,441.20 ($305.15 multiplied by eight), for the additional eight months that Husband had failed to pay toward his TCRS arrearage. The trial court did not address Wife's motions for contempt or her request for $3,000.00 in alimony arrearage and stated only that the "issue of termination or reduction of alimony filed by [Husband] is taken under advisement[.]"

In the second order, entered on October 11, 2024, the trial court declined to reduce Husband's alimony *in futuro* obligation.[4] The trial court reasoned that Husband had failed to meet his burden to prove that there had been a substantial and material change of circumstance warranting a reduction because the parties had "clearly anticipated retirement and accounted for it" during the divorce proceedings. The trial court did not address Wife's motions for contempt or her request for alimony arrearage of $3,000.00 but did determine that Husband's spousal support obligation should continue at $600.00 per month per the Final Decree and should not be reduced further. The trial court then determined that Wife had been the prevailing party with respect to her petition and Husband's counter-petition and awarded her attorney's fees relative to those pleadings. Husband timely appealed.

## II. Lack of Final Judgment

Although the parties have raised several issues for our review, Tennessee Rule of Appellate Procedure 13(b) requires that we first consider whether we have subject matter jurisdiction on appeal. *See Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 601 n.15 (Tenn. 2013) ("Courts have the responsibility to address their own subject matter jurisdiction, even when the parties have not raised the issue."); *see also Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996) (emphasizing that subject matter jurisdiction cannot be waived). Because neither party has questioned subject matter jurisdiction on appeal, this Court must address the issue *sua sponte*. We specifically consider whether the appealed order constitutes a final judgment.

It is well settled in Tennessee that "[u]nless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments

---

[4] In the October 11, 2024 order, the trial court stated that "Husband fell behind in his alimony payments in the amount of $47,603.11." As Husband points out in his brief on appeal, this was not an alimony arrearage but was instead the arrearage amount owed by Husband to Wife for her marital portion of his TCRS benefits. Although the trial court erred in stating that this was the amount of missed "alimony payments," this appears to have been a typographical error because the trial court correctly identified the $47,603.11 amount as Husband's TCRS benefit arrearage in every other order.

only." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990); *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003). "A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *Estate of Henderson*, 121 S.W.3d at 645 (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). An order that does not adjudicate all the claims, rights, or liabilities between all the parties is not appealable as of right. *Estate of Henderson*, 121 S.W.3d at 645. Therefore, unless an exception is created by rule or statute, this Court does not have subject matter jurisdiction to adjudicate an appeal as of right if there is no final judgment. *See Bayberry Assocs.*, 783 S.W.2d at 559.

In the case at bar, our review of the appellate record discloses no final judgment. In its January 8, 2024 order, the trial court entered a judgment against Husband for a TCRS arrearage in the amount of $47,603.11 and directed that a QDRO be entered to facilitate direct payments to Wife from Husband's pension fund of $1,643.20 per month plus $305.15 per month in arrearage. The trial court did not resolve every issue in the January 8, 2024 order but instead took under advisement Husband's request for alimony modification pending entry of the QDRO. Following entry of the January 8, 2024 order and before the QDRO took effect, Husband ceased making alimony payments and did not pay his TCRS obligation as ordered by the court, causing Wife to file two motions for contempt: one in February 2024 and the other in August 2024. The trial court responded to the motions for contempt by ordering Husband to pay the TCRS arrearages and to continue paying $600.00 per month in alimony pending a resolution on Husband's petition to modify spousal support. However, we find nothing in the record indicating how or whether the trial court ruled on Wife's request that the trial court find Husband in "willful contempt" for failing to follow the court's orders. We similarly find nothing in the record indicating that the trial court ever ruled on Wife's request for an alimony arrearage in the amount of $3,000.00 due to Husband's failure to continue his alimony payments following entry of the trial court's January 8, 2024 order.

We reiterate that a final judgment must resolve all the issues in the case "leaving nothing else for the trial court to do." *See Estate of Henderson*, 121 S.W.3d at 645. Absent an order with sufficient findings of fact and conclusions of law concerning Wife's February 2024 and August 2024 motions for contempt and Wife's request for an alimony arrearage in the amount of $3,000.00, there exists no judgment resolving all issues in this case. Furthermore, the trial court did not certify the judgment as final under Tennessee Rule of Civil Procedure 54.02 such that the appeal could proceed without all claims having been adjudicated.

Therefore, because the appellate record in this matter demonstrates no final judgment, this Court lacks subject matter jurisdiction to consider the appeal. Accordingly, this appeal is dismissed for lack of a final judgment without prejudice to the filing of a new appeal once a final judgment has been entered.

### III.  Conclusion

For the foregoing reasons, this appeal is dismissed for lack of subject matter jurisdiction.  This case is remanded to the trial court for further proceedings consistent with this Opinion.  The costs of this appeal are taxed to the appellant, Ronald L. Shoemake.


s/Thomas R. Frierson, II
_____
THOMAS R. FRIERSON, II, JUDGE